ISHEE, J.,
 

 for the court.
 

 ¶ 1. Jennifer H. Price and Alan R. Price, Sr., were granted a divorce on March 27, 2006, in the Chancery Court of DeSoto County on the ground of irreconcilable differences. The final decree of divorce incorporated a property settlement agreement that the Prices had previously executed. On March 29, 2006, Jennifer filed a Chapter 7 bankruptcy action in the United States Bankruptcy Court for the Northern District of Mississippi. Jennifer then filed a petition for contempt and other relief in the chancery court on April 19, 2006, against Alan seeking a monetary judgment for failure to abide by the terms of the property settlement agreement. Alan obtained an order to lift the automatic stay and filed an answer to the petition for contempt and a counter-petition to modify the final decree of divorce and citation for contempt. Following a hearing on the merits, the chancery court: (1) found that Alan was in willful contempt of the court’s orders, (2) established the amount of arrearages, (3) awarded Jennifer attorney’s fees, and (4) slightly modified the monthly alimony payments. Aggrieved, Alan appeals asserting the following assignments of error:
 

 I. The chancellor erred in not finding fraud or overreaching by the Petitioner/Appellee.
 

 
 *1154
 
 II. The chancellor erred in not barring the contempt action by the Petitioner/Appellee based on the “Clean Hands” Doctrine.
 

 III. The chancellor erred in failing to modify the final decree of divorce as to the financial matters and as to the date of the modification.
 

 IV. The chancellor erred in the award of attorney’s fees to the Petitioner/ Appellee.
 

 Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Alan and Jennifer were married on March 22, 1985. They lived together in Tate County, Mississippi until they separated on March 1, 2005. During the course of their marriage, they had two children: their son was born on January 16, 1991, and their daughter was born on July 20, 1997. Jennifer filed for divorce in the Chancery Court of DeSoto County on January 17, 2006. The parties entered a property settlement agreement on February 28, 2006, and it was filed in the DeSoto County Chancery Court Clerk’s Office on March 27, 2006. The property settlement agreement provided that Jennifer and Alan would have joint legal custody of the minor children, but Jennifer would maintain physical custody of the children. The agreement also ordered that Alan: (1) pay $1,750, which represented 21% of his adjusted gross income, in child support each month; (2) provide medical and hospitalization insurance for Jennifer and the children; (3) pay all reasonable and necessary medical expenses incurred by Jennifer and the children that may not be covered by Alan’s insurance policy; (4) convey to Jennifer any right, title, and interest he had in the marital residence, but she would pay the mortgage; (5) assist Jennifer in obtaining a 2005 Nissan Maxima or a vehicle of equal value, but she would be responsible for making the car payments; (6) pay $4,500 each month in alimony until the children graduate from college or Jennifer remarries; (7) accept responsibility for paying any and all of his and Jennifer’s debts incurred during their marriage, which totaled $82,000 that was charged on eleven credit cards listed in Jennifer’s name; (8) pay the children’s private school and college tuition until they graduate or are otherwise emancipated; (9) pay Jennifer’s attorney’s fees and court costs; (10) obtain a life insurance policy with Jennifer named as the sole and irrevocable beneficiary in the amount of $1,500,000 if he is financially able, but, if not, then in the amount of no less than $1,000,000.
 

 ¶ 3. Alan was self-employed in the real estate business throughout the Prices’ marriage, and Jennifer had not worked for sixteen years prior to their divorce. Alan had a fluctuating income, and he testified at trial that his business had slowed down from previous years. The income information that Alan provided at trial was an estimate because the computer containing his business records was in disrepair at the time, and the parties had not filed income tax returns since approximately 1999 or 2000. Alan testified at the hearing that his average monthly gross income was $10,000, and Jennifer had recently begun working at an insurance agency, which provided her with a monthly net income of approximately $1,000.
 

 ¶ 4. At the time of the divorce, the mortgage on the marital residence, which was transferred to Jennifer’s name, was six months past due on payments in the total amount of $12,578.16. On March 29, 2006, two days after the final decree of divorce was entered, Jennifer filed for Chapter 7 bankruptcy. Because the mortgage and credit card debt were listed solely in her name, those debts were included in the bankruptcy action, thereby relieving Jenni
 
 *1155
 
 fer’s and Alan’s obligations to pay the $12,578.16 arrearage on the marital home and the $82,000 in credit card debt.
 

 ¶ 5. Jennifer filed a petition for contempt and other relief claiming that Alan had failed to abide by the terms of the property settlement agreement. Alan responded by filing his answer and counter-petition to modify the final decree of divorce and citation for contempt. Upon hearing testimony presented by both parties and reviewing the relevant financial documents, the chancellor found the following:
 

 1. Alan was in willful contempt of the previous orders of the court for failing to provide and maintain medical and hospitalization insurance coverage for Jennifer and the children. The parties agreed that he would not be required to provide such for the children as long as they remained eligible for Mississippi Medicaid/ CHIPS.
 

 2. Alan was in willful contempt of the previous orders of the court for failing to obtain and maintain a life insurance policy in the amount of $1,500,000 or no less than $1,000,000 for the benefit of Jennifer and the children. Alan was ordered to convey ownership of his $250,000 Midland National Life Insurance Company policy to Jennifer and immediately provide proof of a policy benefitting Jennifer and the children in the amount of $1,500,000 if he is financially able, but no less than $1,000,000.
 

 3. Alan was in willful contempt of the previous orders of the court for failing to pay the full $1,750 in monthly child support, and he owed Jennifer $1,900 in arrearages.
 

 4. Alan was in willful contempt of the previous orders of the court for failing to pay $4,500 in monthly alimony, and he owed Jennifer $37,825 in arrearages.
 

 ¶ 6. The chancellor further ordered A an to pay Jennifer’s attorney’s fees in the amount of $3,500 due to the fact he was found in willful contempt of the court’s previous orders. He also reduced Aan’s monthly alimony payments from $4,500 to $3,000 because approximately $2,000 of the alimony payments from the original order had been intended to pay the mortgage on the marital home, which had since been foreclosed.
 

 STANDARD OF REVIEW
 

 ¶ 7. A reviewing court will defer to the chancellor’s final judgment.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 626(¶ 12) (Miss.2002) (citations omitted). We “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Id.
 
 at 625-26(¶ 8) (citations omitted).
 

 DISCUSSION
 

 I. The chancellor did not err in not finding fraud or overreaching by the Petitioner/Appellee.
 

 ¶ 8. Aan asserts that Jennifer knew before the final divorce decree was entered that she planned to file for Chapter 7 bankruptcy, and she did not reveal her intentions to Aan or the court in advance. Therefore, he contends that the property settlement agreement involved overreaching and misrepresentation. He complains that the monthly expenses he was ordered to pay under the agreement were too high and exceed his income.
 

 ¶ 9. Parties are allowed broad latitude in making decisions regarding ■property settlement agreements in divorce proceedings, and absent overreaching or fraud, the agreements will be enforced.
 
 Speed v. Speed,
 
 757 So.2d 221, 224-25(¶8)
 
 *1156
 
 (Miss.2000). Overreaching occurs when an agreement: (1) “is so one-sided and unfair that it could never be considered ‘adequate and sufficient,’ ” and (2) “resulted from an inequality of bargaining power or other circumstances such that there was no meaningful choice on the part of the disadvantaged party.”
 
 In re Dissolution of the Marriage of De St. Germain,
 
 977 So.2d 412, 419(¶ 21) (Miss.Ct.App.2008). Fraud, on the other hand, requires that the claimant bear the burden of proof by a clear- and-convincing-evidence standard.
 
 Stringfellow v. Stringfellow,
 
 451 So.2d 219, 221 (Miss.1984). The elements of fraud are as follows:
 

 (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) [the speaker’s] intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) [the hearer’s] reliance on its truth, (8) [the hearer’s] right to rely thereon, and (9) [the hearer’s] consequent and proximate injury.
 

 Id.
 

 ¶ 10. We agree with the chancery court that there was no overreaching or fraud in this case. Both parties were represented by counsel, and both parties voluntarily executed the property settlement agreement. The agreement was not the result of one-sided or unequal bargaining power; thus, there was no overreaching by Jennifer. In addition, we find that Alan fails to meet the standard required to prevail on a claim of fraud. Despite his complaints of financial difficulties, we again emphasize that Alan voluntarily executed the agreement. He is actually in a better financial position now than he was prior to Jennifer’s filing bankruptcy because it relieved him of paying $12,578.16 in arrearages on the marital home and $82,000 in credit card debt. “[T]he law favors the settlement of disputes by agreement, and people are free to enter into property settlement agreements — even unfavorable ones. We will not disturb such agreements simply because an agreement is not necessarily in one’s best interest.”
 
 De St. Germain,
 
 977 So.2d at 420(¶ 23). Accordingly, we find no fraud or overreaching in this case, and this issue is without merit.
 

 II. Whether the chancellor erred in not barring the contempt action by the Petitioner/Appellee based upon the “Clean Hands” Doctrine.
 

 ¶ 11. Alan also argues that Jennifer should have been barred from pursuing any action against him for alimony, health insurance, life insurance, marital debts, or attorney’s fees. He alleges that Jennifer had “unclean hands” because “she knowingly and willfully withheld her intentions and plans from the [c]ourt and Alan[,]” and that “she knew when she presented [the agreement] to the [c]ourt that it was an agreement to which she was not going to comply.”
 

 ¶ 12. Civil contempt actions are filed to enforce a court order and coerce a pai'ty to comply therewith.
 
 Lahmann v. Hallmon,
 
 722 So.2d 614, 620(¶ 19) (Miss. 1998) (citing
 
 Jones v. Hargrove,
 
 516 So.2d 1354, 1357 (Miss.1987)). The “clean hands” doctrine provides a defense to civil contempt actions where provisions of marital dissolution agreements have been violated.
 
 Riddick v. Riddick,
 
 906 So.2d 813, 825(¶ 38) (Miss.Ct.App.2004). The doctrine, as interpreted by our supreme court, stands for the proposition that “no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity.”
 
 Id.
 

 
 *1157
 
 ¶ 13. The chancellor has substantial discretion in matters of contempt.
 
 Hunt v. Asanov,
 
 975 So.2d 899, 902(¶ 9) (Miss.Ct.App.2008). It is clear from the record that Alan was, in fact, in willful contempt of the court’s previous orders, not Jennifer. He failed to pay child support in the amount of $1,750 and alimony in the amount of $4,500 each month, and he failed to provide the proper health and life insurance. Therefore, Jennifer did not have “unclean hands,” and the chancellor did not abuse his discretion in allowing her to pursue a contempt action. This issue is without merit.
 

 III. The chancellor did not err in failing to modify the final decree of divorce as to the financial matters and as to the date of the modification.
 

 ¶ 14. Alan contends that the final decree of divorce should be modified due to a material change in circumstances and the parties’ financial situations. He requests the following: (1) his child support obligations be reduced from $1,750 to $1,362.80 per month; (2) the alimony be reduced to $1,000 per month, if not completely eliminated; (3) Jennifer be required to assist in providing health insurance for the children, and all non-covered medical expenses be divided equally between the parties; (4) Jennifer continue paying the Northwestern Mutual and Midland life insurance premiums on Alan’s life if she would like to keep them; and (5) the provision regarding the $1,500,000 or $1,000,000 life insurance policy be deleted. Furthermore, he asks for the changes to be retroactive to April 1, 2006.
 

 ¶ 15. Pursuant to the original final decree of divorce, Alan was required to pay $4,500 in alimony each month, approximately $2,000 of which was to be used by Jennifer to pay the mortgage on the marital home. Due to the marital home’s foreclosure, the chancellor reduced the monthly alimony amount that Alan would be required to pay from $4,500 to $3,000.
 

 ¶ 16. As stated, this Court will uphold a chancellor’s findings of fact provided they are supported by substantial, credible evidence in the record.
 
 Austin v. Austin,
 
 981 So.2d 1000, 1003(¶ 7) (Miss.Ct.App.2007). This is especially true in matters such as alimony and child support, unless we find the chancellor abused his discretion or was manifestly wrong.
 
 Id.
 
 With regard to modifying a divorce decree, this Court has held the following:
 

 “[A] husband may not petition for modification of the original decree without a showing either that he has performed it or that his performance has been wholly impossible.” The supreme court has recognized that this showing must be done in “particular and not general terms.” A husband is required to show what his earnings, his living expenses, and who his dependents are. Yet, “the payment of other debts or expenses will not excuse or justify his default, unless such payment was necessary in order to continue his business or occupation, because his wife’s right to alimony is a prior and paramount claim on his earnings.” Moreover, if a husband wishes to prove an inability to pay, his evidence must show “that he earned all he could, that he lived economically, and paid all surplus money above a living on the alimony decreed to his wife.”
 

 Lane v. Lane,
 
 850 So.2d 122, 126(¶ 12) (Miss.Ct.App.2002) (internal citations omitted).
 

 ¶ 17. We find no reason why we should retroactively apply the modification of the divorce agreement. Alan testified at trial that his gross monthly income was $10,000. He admitted that he had not paid federal, state, or self-employment taxes since 1999 or 2000. He further testified that he lives
 
 *1158
 
 rent-free in a home owned by his current mother-in-law, that he does not have a monthly car payment because he drives his current wife’s car, and that he does not have health insurance; therefore, his take home pay would appear to be $10,000 minus any business expenses for which he may be responsible. Despite his claims of fluctuating income and business expenses, we see no reason why Alan should be relieved from fulfilling his duties as set forth by the divorce decree. Having been in his business for over twenty years, he was in a position to foresee and plan ahead for such circumstances and expenses at the time the agreement was entered. Accordingly, we find that Alan’s argument lacks merit, and we affirm the chancery court’s order.
 

 IV. The chancellor did not err in awarding attorney’s fees to the Petitioner/ Appellee.
 

 ¶ 18. Finally, Alan argues that there is no basis for awarding Jennifer attorney’s fees because she was precluded by the “clean hands” doctrine from pursuing her claim. However, for reasons previously discussed, Jennifer was not barred by the “clean hands” doctrine, so her contempt action was appropriate.
 

 ¶ 19. “[A]n award of attorney’s fees in a contempt case is proper ... [and] is largely entrusted to the sound discretion of the chancellor.”
 
 In re Hampton,
 
 919 So.2d 949, 958(¶ 36) (Miss. 2006) (citation omitted). The chancery court must first consider whether a party willfully violated the court’s order.
 
 Moses v. Moses,
 
 879 So.2d 1036, 1041(¶ 21) (Miss. 2004). As stated earlier, there is no question that Alan willfully violated the court’s order by failing to carry out his responsibilities. Therefore, we find that the chancellor properly awarded attorney’s fees to Jennifer, and this issue is without merit.
 

 ¶ 20. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.