GRIFFIS, J.,
 

 for the court.
 

 ¶ 1. Jesse Qualls Stigler III (“Jay”) appeals an order from the Chancery Court of DeSoto County holding him in contempt of court for the non-payment of child support. Jay claims that the chancellor committed manifest error by (1) invoking the escalation clause in the judgment of divorce, (2) placing Jay in continuous contempt of court by requiring him to pay an unreasonable proportion of his income as child support, (3) miscalculating the interest owed on the unpaid child support, (4) awarding attorney’s fees without an analysis of the
 
 McKee
 
 factors, (5) failing to state the factual findings used to support a child support award outside of the statutory guidelines, and (6) failing to address the issue of Jay’s request that his obligation to pay for college expenses be predicated on a minimum grade point average. Finding error on the part of the chancellor as to issue three, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 2. Jay and Lisa Elaine Stigler (“Lisa”) were divorced on December 5,1994. They have two children, Jesse Qualls Stigler IV (“Jesse”) and Bailey Amanda Stigler (“Bailey”). At the time this appeal was filed, Jesse was twenty-one years old, and Bailey was seventeen years old.
 

 ¶ 3. In their divorce, Lisa was granted custody of the children. Lisa and Jay entered into an agreed property settlement and child support order. The order addressed Jay’s obligation to pay child support as follows:
 

 The [Hjusband shall pay child support to the wife in the amount of $1,300.00 per month beginning January 1, 1997, and due and payable the first day of each month thereafter. During this calendar year and each calendar year hereafter should [the] Husband’s bonus place the aggregate of [the] Husband’s adjusted gross income in excess of the minimum guidelines for child support in effect in the State of Mississippi, the Husband shall pay that amount necessary to bring his child support payments $3,600.00 in excess of the minimum amount of child support as provided by the guidelines then [in] effect for the State of Mississippi based on the Husband’s annual income for that year.
 

 ¶ 4. On June 17, 2002, Lisa brought her first petition for modification and motion to enforce judgment. Lisa asked the chancellor to enforce the escalation clause by adding $3,600 to Jay’s yearly child support payments. An agreed order was entered in which Jay agreed to provide an automobile for Jesse in exchange for Lisa’s agreement not to pursue unpaid child support from Jay for the years since the divorce through 2001. The escalation clause was not addressed in the order.
 

 ¶ 5. On September 6, 2007, Lisa filed a petition for contempt seeking unpaid child support for the years 2002 through 2006. She again requested that the escalation clause be enforced. Jay filed a counterclaim requesting that the chancellor modify his monthly child support obligation due to a substantial decrease in Jay’s salary.
 

 ¶ 6. The chancellor found that the escalation clause was enforceable and awarded Lisa $39,713.28 in unpaid child support, interest, and attorney’s fees. Further, the chancellor found a material change in circumstances and reduced Jay’s monthly child support obligation to $690. Jay now appeals from this order.
 

 
 *551
 
 STANDARD OF REVIEW
 

 ¶ 7. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.”
 
 Samples v. Davis,
 
 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing
 
 Jundoosing v. Jundoosing,
 
 826 So.2d 85, 88(¶ 10) (Miss.2002)). “[We] will not disturb the chancellor’s opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 at 1064(¶ 9) (quoting
 
 Holloman v. Holloman,
 
 691 So.2d 897, 898 (Miss.1996)). Questions of law are reviewed de novo.
 
 Amiker v. Drugs for Less, Inc.,
 
 796 So.2d 942, 945(¶ 7) (Miss.2000).
 

 ANALYSIS
 

 1. Whether the chancellor committed manifest error by invoking the escalation clause in the judgment of divorce.
 

 ¶ 8. Jay argues that there is no clear and convincing evidence of his contempt because the chancellor invoked an escalation clause in the divorce decree that was not specific and had never been previously enforced. He further argues that the escalation clause is void because it is tied only to increases in his adjusted gross income. Lisa responds that the clause is valid because it was agreed to by both parties. She further states that the chancellor correctly interpreted the escalation clause in conformity with the intent of the parties at the time the agreement was entered.
 

 A.Validity of the Escalation Clause
 

 ¶ 9. Jay argues that, according to the supreme court’s decision in
 
 Tedford v. Dempsey,
 
 437 So.2d 410, 419 (Miss.1983), an escalation clause should be based on the children’s expenses, the parents’ earning capacities, and the annual inflation rate for that clause to be enforceable. While such a suggestion was made in the
 
 Tedford
 
 decision, this Court has since held that there is a different standard when the parties enter into an agreement. “The parties may in fact agree of their own volition to do more than the law requires of them. Where such a valid agreement is made, it may be enforced just as any other contract.”
 
 Rogers v. Rogers,
 
 919 So.2d 184, 189(¶ 19) (Miss.Ct.App.2005) (citing
 
 East v. East,
 
 493 So.2d 927, 931-32 (Miss.1986)). Here, Jay and Lisa both agreed to the escalation clause as written; thus, it is a valid clause in their agreement.
 

 B. Enforcement of the Escalation Clause
 

 ¶ 10. Jay further contends that the clause is unenforceable because it was not enforced by the chancellor’s order following Lisa’s first contempt action in 2002. In her petition, Lisa did request that the clause be enforced. However, when the parties appeared before the chancellor, Jay was not represented by counsel. The chancellor suggested that Jay obtain counsel before the action proceeded. Instead of following the chancellor’s direction, Jay met with Lisa and her attorney, and an agreed order was entered. Lisa agreed not to pursue the unpaid child support from the time of the divorce through 2001. Jay agreed to pay Lisa’s attorney’s fees. Both parties agreed to give a pickup truck to their son, Jesse.
 

 ¶ 11. Neither the chancellor nor the agreed order addressed the issue of the escalation clause. It remained a part of their settlement agreement. As such, we find that the chancellor in this action did not err by enforcing the clause.
 

 C. Interpretation of the Escalation Clause
 

 ¶ 12. Jay’s essential argument on appeal is that the clause is ambiguous;
 
 *552
 
 therefore, it cannot be the basis of the chancellor’s finding of contempt. We quote the escalation clause at issue:
 

 The [H]usband shall pay child support to the wife in the amount of $1,300.00 per month beginning January 1, 1997, and due and payable the first day of each month thereafter. During this calendar year and each calendar year hereafter should [the] Husband’s bonus place the aggregate of [the] Husband’s adjusted gross income in excess of the minimum guidelines for child support in effect in the State of Mississippi, the Husband shall pay that amount necessary to bring his child support payments $8,600.00 in excess of the minimum amount of child support as provided by the guidelines then [in] effect for the State of Mississippi based on the Husband’s annual income for that year.
 

 ¶ 13. Jay primarily claims two crucial ambiguities: (1) the clause contains a condition precedent in that it requires Jay be awarded a
 
 bonus
 
 to activate the escalation in child support, and (2) the term “minimum guidelines for child support” is ambiguous when read with the child support guidelines in Mississippi Code Annotated section 43-19-101 (Rev.2004).
 
 [1]
 
 Therefore, the question presented by Jay is whether the escalation clause refers to the minimum income listed in the statute ($5,000) or the percentage of income for two children under the guidelines (twenty percent). Lisa responds that the clause clearly intends for the child support to be calculated by taking Jay’s total adjusted gross income (his salary plus additional compensation), then calculate the statutory amount of child support (twenty percent for the two children), and then add $3,600.
 

 ¶ 14. The supreme court stated the following guidance for contract interpretation:
 

 We have delineated a three-tiered process for contract interpretation. First, we look to the “four corners” of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent. However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord with the parties’ apparent intent. Next, if the parties’ intent remains uncertain, we may discre-tionarily employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary. The three-tiered approach is not a rigid “step-by-step” process. Indeed, overlapping of steps is not inconceivable. We further note that, when examining the contractual provisions of property settlement agreements, special deference is afforded such agreements. As we have stated:
 

 In property and financial matters between the divorcing spouses themselves, there is no question, that absent fraud or overreaching, the par
 
 *553
 
 ties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.
 

 West v. West,
 
 891 So.2d 203, 210-11 (¶¶ 14-15) (Miss.2004) (internal citations and quotations omitted).
 

 ¶ 15. In
 
 West,
 
 the supreme court analyzed a property settlement agreement using this process.
 
 Id.
 
 at 211(¶ 15). The overall intent of the parties was determined by looking to the “four corners” of the document.
 
 Id.
 
 at (¶ 16). The husband argued that certain portions of the agreement were ambiguous; however, the supreme court found that the parties’ compliance with the agreement demonstrated their intent.
 
 Id.
 
 at (¶ 18). The supreme court held: “[hjowever vague, unintelligible, and contrary to his original intent [the husband] may now try to cast the substantive provisions of the property settlement agreement, the extrinsic evidence of his compliance with the provisions for nearly a decade eviscerates this argument of any credibility.”
 
 Id.
 
 at 211-12(¶ 18).
 

 ¶ 16. We agree with Jay that the clause, on its face, is unclear in some respects. However, we find it possible to harmonize the provisions of the clause in accord with Lisa’s and Jay’s intent at the time they entered the agreement. Indeed, we find, as did the chancellor, that the overall intent of the parties by including this clause was to increase child support payments as Jay’s income increased. The parties assumed that Jay’s annual income would be a minimum of $63,000. As initially written, $1,300 per month was more than the statutory guideline of twenty percent of $63,000. However, the parties anticipated that Jay’s income could increase to an amount where $1,300 per month would no longer equal twenty percent of his income. This escalation clause was intended to provide for such a situation.
 
 [2]
 

 ¶ 17. The clause is poorly worded and fails to comport with the language used in section 43-19-101 — the statutory child support guidelines which the clause seeks to utilize. Especially unclear is what the parties intended by the phrase: “adjusted gross income in excess of the minimum guidelines for child support.” The only minimum adjusted gross income listed in the statute is $5,000, which is clearly inapplicable here as the agreement assumed Jay to have a minimum income of $63,000. Although this portion of the clause is unclear, we are able to deduce its meaning using extrinsic evidence of the parties’ compliance with the agreement.
 

 ¶ 18. The intent of the parties is evidenced by their actions during the years in question. The clause is clear that Jay was required to pay Lisa $1,300 per month in child support. By Jay’s own testimony, he paid $1,400 per month during 2002, 2003, and 2004. He also paid more than the required $1,300 per month during 2005 and the first half of 2006. Both Lisa and Jay testified that, at the end of each year, Lisa would calculate the remainder of child support owed by Jay. Lisa did so by calculating twenty percent of Jay’s adjusted gross income. Then, Lisa would subtract what Jay had already paid throughout the year and send Jay the amount due. At that point, the parties would negotiate various credits claimed by Jay for items such as medical bills and insurance on Jesse’s vehicle.
 

 ¶ 19. Evidence of the parties’ actions indicates that the intent of the clause was
 
 *554
 
 to use the twenty percent guideline for child support for two children. Jay was required to pay Lisa at least $1,300 per month. However, at the end of the year, if his income was large enough such that his payments did not total twenty percent of his income that year, he owed Lisa the difference.
 

 ¶20. Jay now claims that he never received a bonus that would trigger the escalation clause; thus, he was only required to pay $1,300 per month. In his testimony before the chancellor, he tried to distinguish the concept of a bonus from the commissions that he received each year. However, this argument is contradictory to his intent as shown by his child support payments. He obviously intended to pay Lisa more than the $1,300 per month because he paid extra each month and participated in the end-of-year calculation, which was done to bring Jay’s child support up to twenty percent of his income for that year. Considering the evidence of Jay’s extra payments, his current argument lacks credibility.
 

 ¶ 21. The only portion of the clause that was not applied by the parties was the additional payment of $3,600 per year. While Jay has a valid argument that certain portions of the clause are unclear, this additional payment is in no way ambiguous. We find that the chancellor correctly interpreted the clause in accord with the intent of the parties by (1) calculating Jay’s adjusted gross income, (2) taking twenty percent as annual child support due, (3) adding the additional $3,600, and (4) subtracting the child support already paid by Jay. Accordingly, this issue is without merit.
 

 2. Whether the chancellor committed manifest error by placing Jay in continuous contempt of court.
 

 ¶ 22. Jay claims that the chancellor’s order requiring him to pay his child support arrearage in monthly payments of $1,000 failed to consider his living expenses and places him in hopeless, continuous contempt of court. Jay cites the supreme court’s decision in
 
 Yelverton v. Yelverton,
 
 961 So.2d 19, 28(¶ 18) (Miss.2007) as support for his argument. However,
 
 Yelverton
 
 involved an initial award of child support and alimony by the chancellor upon the parties’ divorce.
 
 Id.
 
 at (¶ 16). There, the chancellor ordered the husband to pay $10,000 per month from his $12,000 monthly income.
 
 Id.
 
 at (¶ 18). The supreme court found the award per se unreasonable as it gave the wife “approximately $12,118.65 a month, although her monthly expenses totaled only $6,000, and [left the husband] with a negative balance of $4,429 per month.”
 
 Id.
 

 ¶ 23. Such is not the case here. This is not an initial award ordered at the time of the divorce; instead, it is the repayment of child support arrearage from years in which Jay’s total income rose as high as $172, 516.11. It is true that his income is now significantly lower due to the loss of his high-paying job. However, Jay testified that he has put his house on the market, and he has moved into his fian-cée’s house where he pays no rent, utilities, or expenses. The chancellor considered Jay’s reduction in income and, as a result, significantly lowered Jay’s monthly child support requirement from $1,300 to $690. His monthly payment to Lisa of $1,690 amounts to forty-nine percent of his income, and $1,000 of that payment will terminate once his arrearage has been paid. We find that the chancellor’s award is reasonable under the circumstances. Accordingly, this issue has no merit.
 

 3. Whether the chancellor miscalculated the interest owed on the unpaid child support.
 

 ¶ 24. The supreme court has held that a father may receive credit on his
 
 *555
 
 unpaid child support “where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing and other necessities for the child.”
 
 Varner v. Varner,
 
 588 So.2d 428, 435 (Miss.1991). Here, the chancellor found that Jay made direct payments to Lisa for the support of the children. Therefore, Jay was given credit in the amount of $9,057.05.
 

 ¶ 25. However, this credit was deducted from Jay’s total amount of arrearage which already included eight percent interest on the unpaid child support. It seems illogical to this Court that the chancellor would find that Jay was entitled to a credit for amounts that were paid to Lisa, yet charge interest on those amounts. Accordingly, we remand this issue for the chancellor to deduct the amount credited to Jay before applying the interest on the total child support arrearage.
 

 ¶ 26. We further note that, on remand, the chancellor should correct the calculation of Jay’s child support arrearage for 2004. The additional $8,600 provided for in the escalation clause was inadvertently omitted from the 2004 calculation. While this error was not raised on appeal, “the court may, at its option, notice a plain error not identified or distinctly specified” in a party’s statement of issues. M.R.A.P. 28(a)(3).
 

 J.
 
 Whether the chancellor committed manifest error by awarding attorney’s fees without an analysis of the McKee factors.
 

 ¶ 27. Jay argues that the chancellor should not have awarded attorney’s fees to Lisa without first conducting an analysis of the factors set forth in
 
 McKee v. McKee,
 
 418 So.2d 764, 767 (Miss.1982). An award of attorney’s fees in a divorce action is entrusted to the sound discretion of the chancellor.
 
 R.K. v. J.K.,
 
 946 So.2d 764, 778(¶ 43) (Miss.2007).
 

 ¶ 28. In
 
 R.K.,
 
 the supreme court stated that: “[tjhough this Court has differed previously in its statements as to the mandatory considerations before a trial court awards attorney’s fees, each standard was followed by an indication that the ultimate decision is within the discretion of the trial court.”
 
 Id.
 
 at 779(¶46). While written findings on the
 
 McKee
 
 factors is the better practice, the supreme court concluded that “absent an apparent abuse of discretion, this Court will assume the chancellor considered the appropriate factors in awarding attorney’s fees.”
 
 Id.
 
 As such, we find no abuse of discretion in the chancellor’s determination to award Lisa reasonable attorney’s fees. Accordingly, this issue is without merit.
 

 5. Whether the chancellor committed manifest error by failing to state the factual findings used to support a child support award outside of the statutory guidelines.
 

 ¶ 29. Jay claims that the chancellor erred by deviating from the statutory guidelines for child support without making the required findings of fact. Jay is correct that Mississippi Code Annotated section 43-19-101(2) (Rev.2004) requires that any deviation from the guidelines must be supported by specific findings of the chancellor. However, such findings are not required when the child support order is based on the parties’ agreement.
 
 See Williams v. Williams,
 
 810 So.2d 613, 614(¶ 7) (Miss.Ct.App.2001) (addressing an
 
 *556
 
 agreed modification to child support). Here, Jay’s child support obligation was determined by the parties’ agreement. Accordingly, this issue is without merit.
 

 6. Whether the chancellor committed manifest error by failing to address the issue of Jay’s request that his obligation to pay for college expenses be predicated on his children maintaining a minimum grade point average.
 

 ¶ 30. In his counterclaim for modification and other relief, Jay requested that the chancellor modify his divorce decree so that Jay would only be responsible for college expenses so long as the children maintained a 2.0 grade point average. The chancellor failed to address this issue in his order.
 

 ¶ 31. The parties’ settlement agreement entered into at the time of the divorce provided that Jay would maintain a trust fund that would be disbursed to Jesse and Bailey for their college expenses. Should either child elect to not attend college, their share shall be disbursed to them at age 30. There was no requirement that the children maintain a certain grade point average.
 

 ¶ 32. A settlement agreement approved by the chancellor becomes part of the final divorce decree for all legal intents and purposes.
 
 See Switzer v. Switzer,
 
 460 So.2d 843, 845 (Miss.1984). As such, modification of that agreement requires a material change in the circumstances of the parties.
 
 Tingle v. Tingle,
 
 573 So.2d 1389, 1391 (Miss.1990). Further, that material change must occur after the original decree was entered, and it “must also be one that could not have been anticipated by the parties at the time of the original decree.”
 
 Id.
 
 (citations omitted).
 

 ¶ 33. Jay has presented no evidence to show such a material change in circumstances. There was testimony that his son initially had trouble in college, but he has since improved his grades. Regardless, the fact that his children might not maintain a 2.0 grade point average while in college is a circumstance that could have been anticipated at the time of the original decree. Jay simply seeks to add additional limiting language that he failed to include in the settlement agreement. We find that the chancellor’s failure to address this issue does not amount to reversible error. Accordingly, this issue is without merit.
 

 7.
 
 Whether Lisa should be awarded attorney’s fees incurred for her defense of this appeal.
 

 ¶ 34. Lisa claims that she is financially unable to pay her attorney’s fees incurred for her defense of this appeal. In support of her argument, she cites
 
 Grant v. Grant,
 
 765 So.2d 1263, 1268(¶ 19) (Miss.2000) which, in turn, cites the supreme court’s decision in
 
 Monroe v. Monroe,
 
 745 So.2d 249, 253(¶ 18) (Miss.1999). In
 
 Monroe,
 
 the supreme court held that:
 

 Attorney fees are appropriate only where a party is financially unable to pay them. The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary. Mrs. Monroe presented no evidence, however, of the fees charged by her attorney or of the amount of work involved. We therefore find that she is not entitled to attorney fees.
 

 (Internal citations and quotations omitted).
 

 ¶ 35. Similarly, Lisa has provided no evidence of the fees charged by her attorney or of the amount of work involved.
 
 *557
 
 Accordingly, we deny her request for attorney’s fees for this appeal.
 

 ¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
 

 [1]
 

 . Mississippi Code Annotated section 43-19-101(1) and (4) (Rev.2004) provides:
 

 (1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state: Number Of Percentage Of Adjusted Gross
 

 Children Income That Should Be Due Support Awarded For Support
 

 1 14%
 

 2 20%
 

 [[Image here]]
 

 (4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.
 

 [2]
 

 . The parties correctly anticipated an increase in Jay’s income as his adjusted gross income increased to between $82,986.84 and $130,982.99 during the period of 2002 to 2006.