# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00646-COA

JOHN R. BELL                                                                 APPELLANT

v.

LORI M. BELL                                                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2015 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | CARROLL COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | KIMBERLY P. TURNER<br>ROBERT W. LONG |
| ATTORNEYS FOR APPELLEE: | JONATHAN RYAN TAYLOR<br>ALAN D. LANCASTER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S PETITION FOR MODIFICATION OF CHILD SUPPORT; FOUND APPELLANT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT AND OTHER EXPENSES FOR THE CHILD; AWARDED APPELLEE A JUDGMENT OF $37,832.35 FOR THE TOTAL ARREARAGE; ORDERED APPELLANT TO PAY $30,500 OF STUDENT-LOAN DEBT; AWARDED APPELLEE $1,000 IN ATTORNEY'S FEES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART:  12/06/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     John Bell (Jack) appeals the judgment of the Chancery Court of Carroll County on

his petition for modification of the parties' agreed final judgment of divorce.  The chancellor

found a material change in circumstances regarding Jack's earnings since the entry of the judgment of divorce; therefore, the chancellor reduced Jack's child support. However, because Jack had agreed to pay private-school tuition for the parties' minor daughter, Kinsley, and his ex-wife Lori Bell's student loans at the time of the divorce, the chancellor ruled Jack would still be required to pay the tuition and one-half of the student-loan debt. Jack appeals, claiming the trial court was in error for including private-school tuition within his child-support obligation. He also complains that the trial court should not have awarded Lori a lump-sum amount for student-loan indebtedness or $1,000 in attorney's fees. Finding error only in the grant of attorney's fees, and a slight miscalculation in the student-loan indebtedness, we affirm in part and reverse and render in part.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In March 2010, the chancery court entered Lori and Jack's agreed final judgment of divorce based on irreconcilable differences. They had been married since November 1999. A daughter, Kinsley, was born of the marriage in July 2000, and she was fifteen years old at the time of this appeal. Lori and Jack signed a custody, support, and property-settlement agreement at the time of divorce.[1] Jack agreed to pay $1,700 per month as child support, not subject to reduction as long as Lori was making payments on approximately $130,000 in

---

[1] In the divorce proceedings, Lori, a licensed and practicing attorney in Mississippi, was represented by counsel; Jack represented himself under the impression that Lori "would handle the matter." On the petition for modification, both parties were represented by counsel.

student loans the couple had amassed. Jack also agreed to maintain Kinsley's health insurance, pay all health-related expenses not covered by insurance, fully fund the Mississippi Prepaid Affordable College Tuition (MPACT) program to provide for Kinsley's college education, and pay for one-half the cost of her extracurricular activities. The agreement stated that Lori would pay the $130,000 in student-loan debt, which was in her name, even though the funds were used by both parties for their college education, in return for Jack's paying $1,700 in child support, which was over the statutory guidelines percentage. At the time of the divorce, Jack was employed as a mechanical engineer at Greenwood Utility, reporting an adjusted gross monthly income of $3,077. Lori was an attorney who reported an adjusted gross monthly income of $2,515.66.

¶3. Jack was laid off from his Greenwood Utilities employment shortly following the divorce. After a short time at another utility company, Jack began working at his mother's general country store. However, the store closed in April 2011 and was sold. In June, Jack moved to Daphne, Alabama, to seek employment and be closer to his then-girlfriend and now-wife, Julie. Because Jack was unemployed, he began paying only $625 per month in child support to Lori instead of $1,700.[2]

¶4. In May 2012, Jack filed a petition for modification of the final judgment of divorce. Due to his inability to find stable employment, Jack sought a reduction in child support from

---

[2] In July 2011, Jack paid Lori approximately $25,000 in back support after the sale of his mother's store.

$1,700 to $625 per month, inclusive of all after-school care, health-insurance premiums, and extracurricular activities, as well as modification of his obligation to pay all of Kinsley's medical expenses, and his funding of MPACT, among other matters. Lori answered and counterclaimed for contempt of court due to Jack's failure to maintain health insurance for Kinsley, fully fund MPACT, and pay all child support, medical expenses, after-school care, and extracurricular activities as agreed upon in the final judgment.

¶5.　In April 2014, a hearing was held on Jack's petition and Lori's counterclaim.[3] At this time, Jack's adjusted gross monthly income was $2,575.35. The chancellor held Jack in contempt for the following arrearage: child support in the amount of $34,775, extracurricular activities of $2,592.23, uncovered medical expenses of $465.12, and failing to fund MPACT or provide health insurance, resulting in a judgment against him of $37,832.35. The chancellor ordered Jack to pay a lump sum of $3,297.48 by June 2014, with the remaining balance of the arrearage to be paid at the rate of $135 per month. Jack was also ordered to fund the least expensive MPACT fund presently available for Kinsley's college-tuition expenses, and to pay $1,000 to Lori's attorney as partial reimbursement for her attorney's fees. Additionally, the chancellor amended the prior judgment of divorce. The chancellor found a material change in circumstances arising from Jack's earnings since the entry of divorce; therefore, Jack's child-support obligation was reduced to $865 per

---

[3] Two chancellors recused themselves from the matter; so a special judge was appointed.

month.[4]  This figure constituted $365 per month in child support based on Jack's current salary, and $500 a month for tuition to Pillow Academy in Greenwood, Mississippi, where Kinsley had been attending private school.  The chancellor explained that the $500 was a deviation from the guidelines due to Jack's original agreement to pay private-school tuition. Jack was also ordered to continue to maintain health insurance for Kinsley, but he was only responsible for one-half of her uncovered medical expenses.  He was also to pay one-half of her dance expenses at Pillow Academy, but no other extracurricular activities, and he was no longer responsible for one-half of Kinsley's after-school-care expenses.  Visitation rights were slightly modified for convenience of the parties, since Lori lived in Coila, Mississippi, and Jack had moved to Daphne, Alabama.  Finally, Jack was ordered to pay $30,500 of Lori's student-loan debt before April 2015, or incur 4% interest on the remaining balance.[5] Jack timely appealed, raising three issues regarding his payment of the private-school tuition, student-loan debt, and attorney's fees.

## STANDARD OF REVIEW

¶6.    This Court "will not disturb the findings of a chancellor when supported by

---

[4] The chancellor noted the $865 per month for child support plus the $135 per month for the student-loan repayment would total $1,000 per month in payments for Jack, down from $1,700 per month.

[5] The chancellor arrived at the figure of $30,500 by taking $135,000 in total student loans, which were all in Lori's name, subtracting $74,000 which Lori testified was strictly her debt, leaving $61,000 used for living expenses and thus attributable to both parties; the chancellor then divided that figure in half.  While the original divorce decree lists $130,000 in student-loan debt, Jack does not cite this difference as error.

substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶8) (Miss. 2002) (citation omitted). Chancellors are given broad discretion in the area of modification of child support. *Morris v. Stacey*, 641 So. 2d 1194, 1196 (Miss. 1994). "[T]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding," which restricts this Court's review significantly. *Clausel v. Clausel*, 714 So. 2d 265, 266-67 (¶6) (Miss. 1998) (quoting *Gillespie v. Gillespie*, 594 So. 2d 620, 622 (Miss. 1992)).

## ANALYSIS

### 1.      Child Support

¶7.      Jack argues that the chancellor erred when downwardly modifying his child support by deviating from the statutory guidelines and including private-school tuition within the obligation without making a specific finding to support it. Therefore, he claims the chancellor's imposition of tuition should be reversed.

¶8.      Under the applicable Mississippi statute, a noncustodial parent of one child should pay 14% of his or her adjusted gross income for child support.[6] Miss. Code Ann. § 43-19-101(3)(b) (Rev. 2015). A rebuttable presumption of "justness or appropriateness of an award or modification of child support" based upon the guidelines is established, but it "may

---

[6] Adjusted gross income is defined as the amount remaining after deductions for federal, state, and local taxes, social security, retirement, and disability contributions. Miss. Code Ann. § 43-19-101(3) (Rev. 2015).

be overcome by a judicial or administrative body . . . making a written finding or specific finding on the record" that the guidelines are inappropriate in a particular case. Miss. Code Ann. § 43-19-103 (Rev. 2015). Child-support obligations "can be modified when there is a finding of a material change in circumstances [that] was not foreseeable at the time of the judgment of divorce." *Short v. Short*, 131 So. 3d 1149, 1152 (¶8) (Miss. 2014).

¶9.     Jack complains that the $500 per month in private-school tuition made his child-support obligation greater than 33.5% of his adjusted gross income, and with all support-related costs for Kinsley, his obligation was over 51% of his adjusted gross income. Moreover, he claims the finding by the chancellor at the modification hearing regarding the statutory deviation was insufficient. We disagree.

¶10.     The chancellor found a material change in circumstance and granted Jack's request for a downward modification in child support and other financial obligations. Jack's payment decreased from $1,700 per month to $1,000 per month – both figures including consideration for student-loan debt as well as child support.[7] The child-support figure of $865 constituted $365 in statutory child support (14% of his adjusted gross income of $2,575.35)[8] and $500 for private-school tuition at Pillow Academy – the cost of tuition for one month.

---

[7] These figures represent 55% and 39% of Jack's adjusted gross income, respectively.

[8] Jack reported an adjusted gross income of $2,575.35 on his current Rule 8.05 form, which is approximately $500 less than was reported on his original Rule 8.05 form. *See* UCCR 8.05.

¶11.   There was no specific explanation in the agreement itself regarding what comprised the $1,700, but the parties explained their original and current intentions at the modification hearing.  The original custody, support, and property-settlement agreement, signed by both parties, stated:

> As child support, Husband . . . shall pay $1,700 per month, as child support, following the entry of divorce which he shall pay . . . thereafter until the child attains the age of twenty-one years, marries or becomes emancipated, whichever occurs first.  This child support shall not be subject to reduction as long as Wife is paying on the $130,000 student loan referred to hereinafter.

Another provision in the agreement that related to how the parties arrived at the child-support figure was related to the student-loan debts:

> Wife shall pay the following debts: all debts in her name alone including the $130,000 student loan.  It is agreed that this student loan was used by both Husband and Wife for their college educations, and that Wife is agreeing to be responsible for paying all of it in consideration of Husband paying her the child support set out in paragraph 3 above.

At the modification hearing during examination by Lori's counsel, Jack responded affirmatively that the two of them agreed to all of the terms and provisions of the agreement, waited sixty days, and were granted a divorce, and that Jack agreed to pay $1,700 per month in child support under the agreement.  Jack further stated during questioning that they came up with the $1,700 figure "because of her student loans and everything else."  He admitted Pillow Academy tuition was also factored into the figure, which was approximately $450 to $500 per month at the time.  Jack stated Kinsley had gone to Pillow Academy since "day one," or six years at that time, and he wanted her to continue attending the school.

8

Regarding the student loans, Jack admitted the $130,000 was "more than just a student loan"; it included some of their joint living expenses while Lori received her law degree from the University of Tulsa. Jack affirmed that he told the chancellor during the divorce proceedings that he could comply with all of the obligations of the agreement, including the $1,700 in child support.

¶12.    As Lori points out, chancellors are not required to make specific findings of fact supporting upward deviations in child support when the parties have previously, knowingly, and willfully obligated themselves to pay more than the guidelines require, such as through a valid agreement. *See Stigler v. Stigler*, 48 So. 3d 547, 555 (¶29) (Miss. Ct. App. 2010). In divorce agreements, "parties may in fact agree of their own volition to do more than the law requires of them. Where such a valid agreement is made, it may be enforced just as any other contract." *Id.* at 551 (¶9) (quoting *Rogers v. Rogers*, 919 So. 2d 184, 189 (¶19) (Miss. Ct. App. 2005)). Unlike *Stigler*, however, here the modification was not upward, and as Jack states, the parties did not agree to the terms of the modification. *Stigler* did not involve a child-support modification, but the initial agreement. Lori also cites to *Short*, 131 So. 3d at 1152 (¶10), where the supreme court denied downwardly modifying the husband's child-support obligation and enforced the original agreement because, while the obligation was "indeed high, [the husband] freely consented" to provide more support than the statutory guidelines recommended.

¶13.    Jack cites to *Southerland v. Southerland*, 816 So. 2d 1004, 1006 (¶9) (Miss. 2002),

9

*Moses v. Moses*, 879 So. 2d 1043, 1048 (¶14) (Miss. Ct. App. 2004), and *Kilgore v. Fuller*, 741 So. 2d 351, 354 (¶11) (Miss. Ct. App. 1999), for the proposition that private-school tuition is an ordinary expense to be included in the statutory amount of child support, and not to be calculated separately or in addition to the support award. Further, if an award exceeds the presumptive amount of the guidelines, the chancellor must make a specific finding as to why it is just or appropriate. However, neither *Southerland* nor *Moses* involved a modification award, and *Kilgore* was an increase in child support, not a decrease.

¶14. While all of the authority cited by the parties is somewhat distinguishable, we find the chancellor made a sufficient finding at the modification hearing that Jack must continue to pay private-school tuition. The finding was based upon Jack and Lori's detailed testimony that Jack wanted Kinsley to continue her education at Pillow Academy, where she had been for six years. We do not agree with Jack that the sole basis of the chancellor's ruling was the prior agreement. The chancellor took into account what the parties had agreed to before, as well as the way they had raised and educated the child since the divorce. The chancellor was able both to downwardly modify Jack's child support nearly by half, and provide for private-school tuition within the obligation. We find no error with the modification.

¶15. The chancellor provided a sufficient explanation to deviate from the statutory guidelines of child support and include private-school tuition. This issue is without merit.

2.     **Student-Loan Debt**

10

¶16. Jack claims that the trial court erred in awarding Lori a lump sum of $30,500, representing student-loan debt. The chancellor took $135,000 in total student-loan debt mentioned in the divorce decree and subtracted $74,000, which Lori admitted was her law-school tuition and book expenses for three years. The remaining $61,000 was student loans attributable to both of their living expenses; therefore, the chancellor took one-half of that figure and granted a judgment to Lori of $30,500. As previously noted, the original divorce decree lists $130,000 as the amount of debt rather than $135,000.

¶17. Jack does not raise this as error but argues that there were several other miscalculations related to the student-loan judgment. He claims Lori actually attended law school for four years, not three, and thus her total indebtedness was not $74,000 but $96,000 ($21,000 in tuition each year and $12,000 in books for four years). Jack argues $130,000 less $96,000 is $34,000, and one-half of this figure is $17,000, so that should be the maximum portion of indebtedness he is responsible for, not $30,500.

¶18. Jack also contends the inclusion of approximately $500 within the original child-support amount of $1,700 was only to benefit Lori, so she could repay her student loans. Jack claims this, as well as the provision in the original decree that did not allow Jack to reduce his child-support obligation as long as Lori was paying on the $130,000 in student loans, constituted overreaching by Lori when the original agreement was made in 2010.

¶19. "Parties are allowed broad latitude in making decisions regarding property settlement agreements in divorce proceedings, and absent overreaching or fraud, the agreements will

11

be enforced." *Price v. Price*, 5 So. 3d 1151, 1155 (¶9) (Miss. Ct. App. 2009) (citing *Speed v. Speed*, 757 So. 2d 221, 224-25 (¶8) (Miss. 2000)). "Overreaching occurs when an agreement: (1) 'is so one-sided and unfair that it could never be considered adequate and sufficient,' and (2) 'resulted from an inequality of bargaining power or other circumstances such that there was no meaningful choice on the part of the disadvantaged party.'" *Id.* (quoting *In re Dissolution of the Marriage of De St. Germain*, 977 So. 2d 412, 419 (¶21) (Miss. Ct. App. 2008)).

¶20.    Jack's arguments on overreaching relate to the original divorce agreement, when Jack chose not to be represented by counsel and never contested the provision related to student loans until this appeal. Lori testified that it "was [their] understanding" when they made the original agreement that Jack could "pay [himself] out of the student loans and figure regular child support and expenses for Kinsley." Instead, Jack wanted to pay $1,700 per month to Lori, with the provision that this figure could not be reduced until Lori paid off the student loans, for which she was solely responsible.[9] Lori explained she structured the agreement in this manner because the loans were in her name and she did not want to default if Jack did not pay her. Additionally, contrary to Jack's statement, Lori testified that while she was in a four-year program, she only attended law school for three years, with a total cost of $74,000, making Jack's calculations on appeal incorrect.

---

[9] We also cannot say, as Jack does, that because the chancellor modified the $1,700 figure, he made a finding of overreaching by Lori. Neither the testimony nor the evidence pointed to this allegation.

¶21. The only error we find is the chancellor's attributing $30,500 as Jack's share of the student-loan debt for joint living expenses, based upon his improper substitution of $135,000 for $130,000 in total student-loan debt. Due to the chancellor's miscalculation of the original amount of debt, we reverse and render judgment for Lori in the amount of $28,000 for Jack's share of the student-loan debt.

### 3. Attorney's Fees

¶22. Jack argues that the $1,000 award in attorney's fees to Lori was improper because there was no finding of willful contempt. We agree. While an award of attorney's fees is proper in a contempt case and "largely entrusted to the sound discretion of the chancellor," the court "must first consider whether a party willfully violated the court's order." *Price*, 5 So. 3d at 1158 (¶19) (citations omitted). Here, there was no finding that Jack willfully violated the court's order. In fact, the chancellor specifically stated that while Jack was in contempt of court, he was not in willful contempt. The evidence presented at the hearing supports this finding. Jack could not pay his financial obligations due to his employment issues, and when he did obtain extra money due to the sale of his mother's general store, he paid Lori the $25,000 in arrearage. While Lori cites testimony from the modification hearing to support her claim that Jack was in willful contempt, we do not find it sufficient to overturn the chancellor's finding that Jack's contempt was not willful. Accordingly, we reverse and render the $1,000 award of attorney's fees to Lori.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF CARROLL COUNTY, FIRST JUDICIAL DISTRICT, IS AFFIRMED IN PART AND REVERSED AND**

13

**RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**