FAIR, J., for the Court:
¶ 1. The Hancock County Chancery Court found Roger Caplinger in contempt for failure to pay child support and uncov *995 ered medical bills. Roger now appeals claiming the chancellor erred in interpreting the parties’ child-support agreement, finding Roger in contempt, and awarding attorney’s fees to Gina Caplinger (Julian). We find the chancellor’s interpretation of the escalation clause in their agreement, his adjudication of Roger’s contempt, and his award of attorney’s fees supported in the record. However, we find that the chancellor erred in determining the support order was a global order and in ordering Roger to pay half of the medical bills. Therefore, we affirm in part and reverse and remand in part.
FACTS
¶ 2. Roger and Gina were divorced in 1994. Pursuant to their child-custody, support, and property-settlement agreement, Gina had custody of the two children, Ashley and Christen. Roger was to pay child support, provide health insurance for the children, and pay half of any deductibles.
¶ 8. In 2007, Ashley was seventeen and became pregnant. Around the end of December, she lived with her father before moving into an apartment -with her boyfriend in August 2008. The parties agree that Ashley was emancipated beginning in 2008. In June 2008, Christen was fifteen and moved in with her father for a few months prompting Roger to file for modification of custody. Gina counterclaimed for contempt and to modify child support. Ultimately, Christen moved back to her mother’s in September, and Roger withdrew his motion.
¶ 4. Gina proceeded on the counterclaim, and after a trial, the chancellor found Roger in contempt of the property-settlement agreement. Explaining that the agreement was ambiguous, the chancellor interpreted it and determined Roger was $52,713 in arrears. The chancellor ordered him to pay the arrearage and attorney’s fees of $9,784.28.
¶ 5. Roger now appeals arguing that the chancellor erred in construing the property settlement agreement, refusing to acknowledge the divisible support order, finding Roger in contempt, and awarding attorney’s fees. Roger asserts that the chancellor’s findings were against the overwhelming weight of the evidence.
STANDARD OF REVIEW
¶ 6. “Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000) (citation omitted). This Court will not “interfere with the chancellor’s findings of fact unless they were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001) (citation omitted). However, the chancellor’s application of the law is reviewed under a de novo standard. Id.
DISCUSSION
1. Property-Settlement Agreement
¶ 7. Roger agrees that the property-settlement agreement is ambiguous but challenges the interpretation of two specific clauses. Each will be addressed in turn.

a. Periodic Increase

¶ 8. Roger claims the chancellor failed to follow the rules of construction and improperly interpreted the following escalation clause:
Periodic Increase: Husband shall increase his payment to Wife, for child support, with each raise, such increase *996 to be twenty (20%) percent of his increase in pay.
¶ 9. The interpretation of an ambiguous writing is a question of fact for determination by the fact-finder. Dennis v. Searle, 457 So.2d 941, 945 (Miss.1984). The cardinal rule of construction is to “give effect to the mutual intentions of the parties.” Hoerner v. First Nat’l Bank of Jackson, 254 So.2d 754, 759 (Miss.1971). Any ambiguity found in the writing is construed more strongly against the party who prepared it. Right v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). The construction that the parties have placed upon the contract, or how they behave under it, is “relevant extrinsic evidence, and often the best evidence of what the contract requires them to do.” Id.
¶ 10. The chancellor found that the periodic increase was enforceable because its language was clear, and Roger had voluntarily increased his payment from $400 to $500 in 1996. The chancellor also found that the periodic increase was related to the statutory guidelines and was intended to keep payments at twenty percent of Roger’s adjusted gross income (AGI) for the two children. To calculate the arrear-age, the chancellor determined Roger’s adjusted gross income for each year[1] and found that twenty percent of that figure should have been paid as child support. Due to decreases in Roger’s earnings, which are not contemplated in the periodic-increase clause, the chancellor began calculating arrearages for increased support from 2004, when Roger’s yearly income returned to over $50,000.
¶ 11. After reviewing the evidence presented, we find that the chancellor’s interpretation was supported by the plain language of the agreement and the parties’ conduct. Roger and Gina both testified to their understanding of the periodic-increase clause. Each understood that when Roger received a raise, he should increase his support payments equal to twenty percent of that raise. And Roger voluntarily increased his payment by $100 in 1996. Further, the chancellor’s determination that the clause referenced the child-support guidelines is both logical and practical. For the last thirteen years, neither party ensured that the periodic increases happened. Instead of attempting to reach back in time and determine exactly what raises Roger received on what dates, the chancellor determined Roger’s adjusted gross income and applied the statutory twenty percent. Generously, the chancellor determined that because the clause did not provide for decreases in salary, the arrearage should only be calculated from 2004.[2] We cannot say that the chancellor abused his discretion in interpreting the periodic-increase clause.
¶ 12. This Court has held that property-settlement agreements are not treated the same as support ordered by a chancellor. In Wing v. Wing, 549 So.2d 944, 947 (Miss.1989), the Mississippi Supreme Court reaffirmed its prior holding in Tedford v. Dempsey, 437 So.2d 410 (Miss.1983), and set out four factors to which escalation clauses must be tied when established by a chancellor. The court noted the problems related to drafting enforce *997 able escalation clauses and urged the bar to:
(a) specify -with certainty the particular cost of living or consumer price index which is to be utilized (there are many);
(b) show the applicable ratio (present CPI is to ascertainable CPI as present award is to future award); (c) calculate the base figure as of the date of judgment; (d) establish frequency of adjustments (we suggest nothing less than yearly); and (e) establish an effective date for each adjustment (e.g. anniversary of date of judgment).
Wing, 549 So.2d at 947.
¶ 13. But more recently, in Speed v. Speed, 757 So.2d 221 (Miss.2000), the supreme court considered an escalation clause related to periodic alimony payments. The property-settlement agreement provided alimony of $1500 per month and read: “In addition to the foregoing said payments herein above provided shall increase or decrease directly in relation to the increases and the cost of living as determined by the U.S. Department of Commerce Consumers Cost of Living Index, to be adjusted annually.” Id. at 223 (¶ 2). The supreme court held that the clause was enforceable and explained: “Mr. Speed assumed the risk of having to make the escalated payments.... No evidence of fraud, mistake, or overreaching was shown by Mr. Speed to have influenced the execution of the property settlement agreement by the parties....” Id. at 226 (¶¶ 14-15).
¶ 14. This Court has also considered escalation clauses in the context of child-support agreements in irreconcilable differences divorce settlements. In Rogers v. Rogers, 919 So.2d 184 (Miss.Ct.App.2005), the father argued that his agreement to pay fourteen percent of any future bonuses or salary increases was an unenforceable escalation clause. Finding that the argument lacked merit, we held: “[Pjarties may in fact agree of their own volition to do more than the law requires of them. Where such a valid agreement is made, it may be enforced just as any other contract.” Id. at 189 (¶ 19). Further, Stigler v. Stigler, 48 So.3d 547 (Miss.Ct.App.2009), directly addressed this issue. In Stigler, the father attempted to invalidate an escalation clause that was part of his property-settlement agreement because it was not based on the four Wing factors. Id. at 551 (¶ 9). In holding that the escalation clause was enforceable, this Court again pointed out “there is a different standard when the parties enter into an agreement.” Id.
¶ 15. Roger agreed to a periodic increase in child-support payments based on a percentage of periodic increases in his net income. There was no evidence of fraud, mistake, or overreaching in the execution of the parties’ property-settlement agreement. Roger simply agreed to do more than the law required for his children, and the chancellor required him to live up to his promises. This agreement is enforceable.

b. Per-Child Support Order

¶ 16. Roger argues that the chancellor erroneously determined that because he increased his support payments to $500, he converted the divisible support award into a global support award and could not arbitrarily divide the new amount when one child was emancipated.
¶ 17. For global child-support payments, the emancipation of one child does not automatically reduce the lump-sum payment. Varner v. Varner, 588 So.2d 428, 433 (Miss.1991). But if a support order specifies that a certain amount is payable per child, then support terminates as to a child upon emancipation of that child. See Ligon v. Ligon, 743 So.2d 404, *998 408 (¶ 11) (Miss.Ct.App.1999). In Ligon, we found that a mother was properly ordered to reimburse a father for payments he made after one child was emancipated because the support order in question provided $100 per month for each child. Id.
¶ 18. Here, the support order states: “Husband shall pay to Wife, as child support, the sum of Two Hundred Dollars ($200.00) per month, per child, for a total of Four Hundred Dollars ($400.00).... ” This is a divisible support order. As we find that the property-settlement agreement is clear and unambiguous as to this issue, the chancellor erred in determining that Roger’s conduct created a global support award. The support order was and remains divisible.
2. Uncovered Medical Bills
¶ 19. Roger claims that the chancellor’s finding of contempt regarding his failure to pay half of the children’s medical bills is not supported by the record.
¶ 20. The property-settlement agreement reads: “Husband shall be solely responsible for the payment of any and all insurance policies covering ... [the] minor children ..., and any deductibles not covered by insurance will be split by the parties.” The chancellor found that Roger had not paid his portion of the medical bills prior to trial and held him in contempt.
¶ 21. There is no language in the property-settlement agreement about uncovered medical bills. The agreement specifically provides for insurance coverage and deductibles. Though it may be Roger’s moral obligation to pay half of the children’s uncovered medical bills, he was not required to do so by the plain language of the property-settlement agreement. We find that the chancellor was manifestly wrong in construing the agreement to require Roger’s payment of half of the children’s uncovered medical bills.
3. Contempt
¶ 22. Roger asserts that the chancellor erroneously held him in contempt for his failure to pay child support. He argues that he could not have known how much support to pay prior to the chancellor’s construction of the agreement.
¶ 23. A payor’s failure to comply with a court order is prima facie evidence of contempt. Rainwater v. Rainwater, 236 Miss. 412, 421, 110 So.2d 608, 611 (1959). Civil contempt must be proven by clear and convincing evidence. Masonite Corp. v. Int’l Woodworkers of Am,., 206 So.2d 171, 180 (Miss.1967). Contempt cannot be sustained “where the final decree is insufficient to advise the party affected in clear and unequivocal language of that which he has been ordered to do.” Switzer v. Switzer, 460 So.2d 843, 846 (Miss.1984). But an order need only be reasonably specific. In Davis v. Davis, 829 So.2d 712, 714-15 (¶ 10) (Miss.Ct.App.2002), this Court found that an order for a husband to pay all but three specific debts was not too ambiguous for compliance. Though the order did not say, affirmatively, that he was to pay the remaining debts, we found that there was no other reasonable explanation. Id.
¶ 24. Here, Roger testified that he understood he was supposed to increase his support payments by twenty percent of each raise he received. It is undisputed that he deliberately failed to do so. He cannot now, after thirteen years, argue that he was insufficiently advised of what he was ordered to do. That he could not anticipate the exact amount of his arrear-age is not relevant to his willful disregard of the support order. Because Roger has made no attempt since 1996 to increase his *999 payments or document his raises, it is naturally difficult to determine exactly what his support should have been. That is not the fault of the chancellor, and it does not excuse Roger’s contumacious conduct.
¶ 25. Further, we note that it is error, as a matter of law, for a chancellor not to award interest on a judgment for past-due support. Ladner v. Logan, 857 So.2d 764, 772-73 (¶ 30) (Miss.2008). In Brand v. Brand, 482 So.2d 236, 237-38 (Miss.1986), the Mississippi Supreme Court held that interest accrues on each payment from the date it became due. On remand, we instruct the chancellor to assess interest at a fair rate under the circumstances. See Miss.Code Ann. § 75-17-7 (Rev.2009).
4. Attorney’s Fees
¶ 26. Roger argues that there was no basis for the chancellor’s award of attorney’s fees. We disagree. An award of attorney’s fees is appropriate when there has been a finding of contempt. Gardner v. Gardner, 795 So.2d 618, 619 (¶ 4) (Miss.Ct.App.2001). A showing of inability to pay under the McKee factors is not required. See Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993). “To hold otherwise would cause no peril to those restrained from certain conduct if they violate the orders of a court.” Smith v. Little, 843 So.2d 735, 738 (¶ 13) (Miss.Ct.App.2003) (citation omitted). The chancellor did not abuse his discretion in awarding attorney’s fees.
CONCLUSION
¶ 27. The chancellor did not abuse his discretion in interpreting the periodic-increase clause, finding Roger in contempt for his failure to pay child support, or ordering Roger to pay attorney’s fees. It was error to find that the divisible child-support award had been, converted into a global award, and to find Roger in contempt for his failure to pay the children’s uncovered medical bills. On remand, we direct the chancellor to recalculate Roger’s arrearage and current support obligations based on a divisible support order and to assess interest on the arrearage at a fair rate under the circumstances.
¶ 28. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT. JAMES, J., NOT PARTICIPATING.

. Roger's AGI was determined from his Social Security Administration earnings report using an effective overall tax rate of twenty-five percent.

. We note that under a strict construction of the contract’s language, Roger would not be entitled to any reduction of support during the years his salary fell below $50,000. Had the chancellor not been so generous, Roger would be obliged to pay a substantially higher arrearage.