ON WRIT OF CERTIORARI

PIERCE, Justice,
for the Court:
¶ 1. William Andrew Short (Andy) and Kathryn Taylor Short were divorced in 2007. As part of the divorce judgment, the parties entered into a property, child- *1151 support, and child-custody agreement stipulating that Andy would pay child support in the amount of $50,000 per year until the child began kindergarten; thereafter, he would pay fifteen percent of his adjusted gross income (AGI), never to fall below $36,000 per year.
¶ 2. In 2011, Kathryn filed a complaint for contempt, alleging that Andy had failed to make child-support payments. Andy filed a counter-complaint for custody and to modify child support. Andy alleged a material change in circumstances because of a significant reduction in his adjusted gross income, requiring a new child-support calculation. The chancellor found that no material change in circumstances had occurred and ordered Andy to continue paying the minimum requirement of $36,000 per year in child support, pursuant to the original child-support agreement.
¶ 3. Andy appealed, arguing that the chancellor had disregarded statutory child-support guidelines, that the child-support provision in the parties’ agreement violates Mississippi law, and that the chancellor had erred in calculating Andy’s adjusted gross income. The Mississippi Court of Appeals affirmed, finding that the chancellor had considered all of the appropriate factors for modification and had supported his conclusions with findings of fact from the record. Short v. Short, 131 So.3d 1200, 1202 (Miss.Ct.App.2013).
¶ 4. Andy filed a petition for writ of certiorari, stating that the Court of Appeals had failed to address his argument that the automatic child-support-ealeulation clause violates Mississippi law. Andy also claimed that the Court of Appeals failed to consider that the chancellor had wholly disregarded the statutory child-support guidelines, had erred by affirming the chancellor’s finding that no material change in circumstances had occurred, and had overlooked the substantive error in the chancellor’s calculation of Andy’s adjusted gross income. We granted certio-rari.
STANDARD OF REVIEW
¶ 5. Factual findings made by the chancery court will not be disturbed if they are “supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.” Biglane v. Under the Hill Corp., 949 So.2d 9, 14 (Miss.2007) (quoting Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996)).
¶ 6. Additionally, support agreements pursuant to an irreconcilable-differences divorce cannot be modified without a finding of a material change in circumstances, which was not foreseeable prior to the time of the judgment of divorce. Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990).
ANALYSIS
I. Whether the child-support obligation is modifiable.
¶ 7. Andy argues that the trial court found that the child-support obligation was not modifiable and states that he is forever bound to pay at least $3,000 per month in child support without regard for his or global circumstances. It is clear from the record that, during the chancellor’s ruling on whether a material change in circumstances had occurred, he conducted a full analysis under the factors set forth in Pipkin v. Dolan, 788 So.2d 834 (Miss.Ct.App.2001). However, the chancellor later focused on the mandatory language in the parties’ agreement stipulating that Andy should never pay less than $3,000 per month in child support. Ultimately, the chancellor ruled that the child-support *1152 agreement would remain in effect based on his consideration of the factors, the best interest of the child, and Andy’s agreement to be bound by the terms of the child-support agreement.
¶ 8. The chancellor’s ruling gives the impression that the child-support agreement was unmodifíable because Andy had agreed to be bound by its terms. However, support obligations most certainly can be modified when there is a finding of a material change in circumstances, which was not foreseeable at the time of the judgment of divorce.[1] Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990). Therefore, the chancellor’s ruling is reversed, and this case is remanded for a determination of whether a material change in circumstances has occurred.
II. Whether the chancellor erred in failing to consider the statutory guidelines for child support.
¶ 9. Andy asserts that the trial court disregarded the statutory guidelines for child support, constituting error. However, Andy fails to address that the child support was ordered pursuant to an agreement that Andy freely entered into. We consider (1) the importance of allowing parties to reach their own agreements during divorce settlements, and (2) the importance of holding parties to those agreements. Bell v. Bell, 572 So.2d 841, 844 (Miss.1990). Further, when assessing child-support and custody agreements, it is crucial to ensure that the agreement is “adequate and sufficient” to provide “... for the care and maintenance of the children .... ” Bell, 572 So.2d at 845 (citing Miss.Code Ann. § 93-5-2 (Rev.2013)).
¶ 10. Here, the parties were given the broad latitude prescribed to them in Bell, and they used that latitude to form an agreement that they both presented to the chancellor as sufficient, to support their child. Although, on the surface, it appears the amount of child support is indeed high, Andy freely consented to provide more support for his child than is recommended by the statutory guidelines. Stigler v. Stigler, 48 So.3d 547, 551 (Miss.Ct.App.2009) (Escalation clause did not violate Tedford v. Dempsey because “... parties may in fact agree on their own volition to do more than the law requires of them. Where such a valid agreement is made, it may be enforced just as any other contract.”). See Tedford v. Dempsey, 437 So.2d 410, 419 (Miss.1983). The facts of this case support that the parties knowingly and willingly entered into an agreement that reflected both of their decisions as to what amount would be sufficient to support their child. Thus, Andy should be required to adhere to the agreement he freely entered into, which was deemed sufficient by the chancellor and was incorporated into the judgment of divorce, unless a material change in circumstances is proven. Bell, 572 So.2d at 844-45; see also Steiner v. Steiner, 788 So.2d 771, 776-77 (Miss.2001) (Defendant was not relieved of making “high” alimony payments to his former wife just because he may have made a “bad deal.”). This issue is without merit.
III. Whether the child-support agreement is binding.
¶ 11. Andy requests that this Court address, on first impression, the enforce *1153 ability of a de-escalation clause contained in a child-support agreement.
¶ 12. This Court’s evolving interpretation on including escalation clauses in child-support agreements breaks ground in Tedford v. Dempsey, in which we explained that escalation clauses could save parties from the distress that accompanies support-modification proceedings. Tedford, 437 So.2d at 419. In Tedford, the father was appealing the chancellor’s finding that a material change in circumstances had occurred, warranting an increase in the amount of support. Tedford, 437 So.2d at 418. This Court noted that the parties had, like many couples, “... been at each other’s throat[s] ...” from the beginning, and the inclusion of an escalation clause could have avoided the agonies of their current litigation, because certain changes in circumstances generally can be reasonably anticipated. Tedford, 437 So.2d at 418-19 (“... anyone can reasonably anticipate: That children’s expenses generally will increase as they get older, that the father and mother’s earning capacity will generally increase from year to year, and that inflation will continue at some level and will partially affect both the children’s expenses and the parents’ earning capacity.”).
¶ 13. We take this opportunity to emphasize the following guidance in Tedford:
In the child support provisions of their separation agreements, the parties generally ought to be required to include escalation clauses tied to the parents’ earnings or to the annual inflation rate or to some factored combination of the two. Though under the structure of the irreconcilable differences statute freedom of contract is exalted, there are limits. The statute requires that the chancellor find that “the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children....
Tedford, 437 So.2d at 419 (citing Miss.Code Ann. § 93-5-2 (Supp.1982) (emphasis added)).
¶ 14. Wing v. Wing affirmed Tedford, and encouraged the use of escalation clauses. Wing v. Wing, 549 So.2d 944, 948 (Miss.1989). This Court in Wing stated that Tedford requires that escalation clauses should be tied to the inflation rate, the noncustodial parent’s increase or decrease in income, the child’s expenses, and the custodial parent’s separate income. Wing, 549 So.2d at 947. Bruce v. Bruce enforced the four factors stated in Tedford and Wing, but interpreted Tedford to mean that escalation clauses must be tied to all of the four factors. Bruce v. Bruce, 687 So.2d 1199, 1202 (Miss.1996).
¶ 15. For clarity, we overrule Bruce’s interpretation that escalation clauses must be tied to all four factors. Id. We focus on the original language in Tedford providing that escalation clauses should be “... tied to the parents’ earnings or to the annual inflation rate or to some factored combination of the two.” Tedford, 437 So.2d at 419 (emphasis added). We affirm Wing in that the creation of escalation clauses should begin with a consideration of the inflation rate, the noncustodial parent’s increase or decrease in income, the child’s expenses, and the custodial parent’s separate income. Wing, 549 So.2d at 947. However, we are not mandating that escalation clauses be specifically tied to all four factors. Foremost, escalation clauses must adequately and sufficiently provide for the custody and maintenance of the child pursuant to Mississippi Code Section 93-5-2. Tedford, 437 So.2d at 419.
¶ 16. The escalation clause in Wing was unenforceable because it lacked the specificity required for this Court to consider it *1154 a valid agreement. Wing, 549 So.2d at 948. This Court found that Russell Wing had established that, when reading the agreement, it could not be interpreted, and it was unclear what amount was owed, what year the clause became effective, and what consumer price index was to be used. Id. at 947.
¶ 17. Here, there is no question that the agreement is clear and measurable, and it adequately and sufficiently provided for the needs of the child. It is farfetched to assume that, during the formation of the agreement, the parents and the trial court were not considering the cost increases that would occur in raising a child and the fluctuations that could occur in the parents’ salaries. By setting a percentage basis at fifteen percent of Andy’s AGI, the agreement allots room for fluctuation in income, and by setting a minimum amount of $36,000 per year, the agreement reflects the minimum amount the parties agreed was sufficient to support the child. Lastly, the clause clearly is tied to Andy’s earnings, and depending on Andy’s yearly income, the clause could be escalating or de-escalating. Currently, it is de-escalat-ing, due to the decrease in his income.
¶ 18. Under the specific facts of this case, the agreement is binding and comports with the guidelines in Wing and Tedford. Wing, 549 So.2d at 947; Tedford, 437 So.2d at 419. Nonetheless, this case is remanded for a determination of whether a material change in circumstances exists to warrant a modification of the agreement.
IV. Whether the chancellor committed a mathematical error when calculating Andy’s income.
¶ 19. The record reveals that the chancellor, while referencing the factors stipulated in Pipkin v. Dolan, 788 So.2d 834 (Miss.Ct.App.2001), considered the following issues during his determination: (1) the needs of the child in accordance with the mother’s Uniform Chancery Court Rule 8.05 financial statement; (2) the increase in both parents’ expenses in accordance with their Rule 8.05 financial statements; (3) inflation; (4) changes in both parties’ incomes, the disparity between their incomes, and their earning capacities; (5) necessary living expenses of each party; (6) estimated amount of income taxes for each party; (7) no free use of any residence; and (8) that the parties created and agreed to the settlement agreement.
¶ 20. During the chancellor’s ruling on the parties’ necessary living expenses, the chancellor stated that Andy’s net monthly income was $12,719.96. The chancellor reached the amount of $12,719.96 by adding Andy’s $3,200-per-month mortgage expense to his net monthly income of $8,519.96, which actually equates to $11,719.96. However, Andy’s Rule 8.05 financial statement shows Andy’s gross monthly income to be $11,680.73. Andy lists deductions of federal income taxes amounting to $2,920.18 per month and nonreimbursed business expenses amounting to $481.49 per month, which totals $3,401.67 in deductions, leaving Andy with $8,279.06 in net monthly income. It is unclear how the chancellor reached $8,519.96 in net monthly income, or why the chancellor thought this net amount included the deduction of Andy’s monthly mortgage. Nevertheless, it is clear from the record that the chancellor found that Andy’s monthly mortgage payment of $3,200 per month was an unnecessary living expense, considering Andy’s yearly income had fallen from $280,000 in 2007 to $98,000 in 2010.
¶ 21. The chancellor’s calculation of Andy’s monthly income was incorrect when compared to the Rule 8.05 financial statement contained in the record. Since the chancellor’s determination that no ma *1155 terial change in circumstances had arisen depended in part on Andy’s monthly income, this judgment is reversed and the case remanded for a recalculation of Andy’s monthly income in order for the trial court to correctly determine whether a material change in circumstances exists warranting modification of the agreement.
¶ 22. To be clear, we are reversing the chancellor’s finding of no material change in circumstances and remanding the .case for a new determination of whether a material change in circumstances has occurred and, if so, for an appropriate adjustment to child support. These determinations, in our view, first should be made at the trial-court level.
CONCLUSION
¶ 23. The chancellor erred in calculating Andy’s monthly income during his determination of whether a material change in circumstances existed. Further, the chancellor’s ruling erroneously indicated that the parties’ child-support agreement was nonmodifiable. Therefore, the judgments of both the Court of Appeals and the trial court are reversed and this case is remanded to the Chancery Court of Lee County for a recalculation of Andy’s income and for a determination of whether a material change in circumstances exists to render the child-support agreement modifiable.
¶ 24. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION.

. The parties are allowed to create their own agreement, then with the chancellor's approval, the agreement is incorporated into the divorce judgment. A lapse of time will exist between when the parties made the agreement and when the agreement is incorporated into the divorce judgment. The chancellor should look to when the parties' agreement was finalized into the divorce judgment when determining if a material change in circumstances, which was not foreseeable at the time of the judgment of divorce, has occurred.