# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00457-COA

**DAVID H. VINCENT**                                                                              **APPELLANT**

**v.**

**JOAN VINCENT RICKMAN**                                                              **APPELLEE**

DATE OF JUDGMENT:                10/26/2015
TRIAL JUDGE:                             HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:       DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          BYRON RUSSELL MOBLEY
ATTORNEYS FOR APPELLEE:          A.E. (RUSTY) HARLOW JR.
                                 KATHI CRESTMAN WILSON
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         APPELLANT HELD IN CONTEMPT FOR
                                 FAILURE TO COMPLY WITH CHILD-
                                 SUPPORT OBLIGATIONS
DISPOSITION:                     AFFIRMED - 05/23/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In 1997, David Vincent and Joan Rickman were granted a divorce by the DeSoto County Chancery Court. David was ordered by the chancery court to pay child support for the couple's three children. Later on, the parties also entered into an agreement that required each party to pay one-half of their children's college expenses. Also on two separate occasions, David was ordered by the chancery court to implement an income-withholding order—to be delivered to his employer. But David, an executive in his organization, failed to see to it that the order was implemented.

¶2. In February 2014—after David missed a monthly child-support payment, failed to pay various college expenses, and had still not implemented the income-withholding order—Joan filed a petition with the chancery court to cite David in contempt for nonpayment and for other relief. After a trial, in which only the parties testified, the chancellor issued an order finding David in contempt and awarded Joan attorney's fees. David appeals. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶3. In 1997, David and Joan were divorced by a judgment entered by the DeSoto County Chancery Court. At the time of the divorce, the parties had three minor children. The children were placed in Joan's custody, with David being granted certain visitation and directed to pay Joan child support.

¶4. At some point after the parties were divorced, Joan's child-support payments were redirected to the Mississippi Department of Human Services (DHS). On April 24, 2012, the chancery court entered an agreed order that modified the decree of divorce. This agreement changed David's child-support obligation as well as established an obligation on the parties, making them responsible for the payment of certain college expenses for their children.

¶5. The provision of the agreement that set out the obligation of the parties in respect to their children's college expenses stated:

> [B]oth parties shall be responsible for one-half (½) of the costs of a college education for the minor children in an amount not to exceed that of the cost of a public in-state college or university plus campus room and board together with any other charges payable directly to the institution . . . .

¶6. On September 4, 2012, the chancellor cited David for contempt of court for missing

2

required payments. The chancellor awarded Joan a judgment against David in the amount of attorney's fees incurred by her in the prosecution of the contempt action. Additionally, the chancellor directed that all future child-support payments were to be paid through the entry of an income-withholding order. That very same day, an order for income withholding was entered by the court.

¶7.    David delivered a copy of the chancery court's withholding order to his employer and requested that the employer implement it. Yet David—the executive director at his place of employment—advised the organization's board that he did not believe he was obligated to pay and asserted his "right" to not have to pay through a wage-withholding order.

¶8.    On June 17, 2013, the matter was called back before the chancery court, and the chancellor found that, although David's child-support obligation was current as of the trial, David was in contempt of the chancery court's previous orders. In his order, the chancellor directed David to pay his next month's child-support payment directly to Joan, but restated that David was to pay his future child-support payments through the income-withholding order. The chancellor further ordered David to ensure that the income-withholding order was in place and that Joan was receiving the support payments.

¶9.    David continued to fail to abide by the chancery court's income-withholding order. But David ensured that Joan continued to receive her child support by paying it directly to DHS—with one exception. As ordered by the chancellor, David paid his July 2013 child-support payment directly to Joan. However, Joan failed to notify DHS of David's direct payments, and DHS considered David to be in arrears in his child-support obligation. DHS

then seized David's tax refund. Upon learning of the tax-refund seizure, and consulting with DHS, David released the seized monies to DHS so that they then could be applied toward his child-support obligation. David thought that the seized monies, having been released by him to DHS in December, would be credited to his child-support obligation in January 2014. Operating under this assumption, David did not make any payments to DHS in January. But in early February, DHS informed David that there had been some delay in its ability to credit David with the seized tax monies. To comply with the chancellor's mandate that David ensure that Joan received her child support, David made two child-support payments to DHS on Joan's behalf. David made one payment on February 5, 2014, and another one on February 7, 2014. On February 21, Joan filed a petition with the chancery court to cite David in contempt for nonpayment and for other relief.

¶10. While Joan's petition was pending, David indicated to one of his daughters, through email, that he was no longer responsible for the payment of her college expenses because she had turned twenty-one years old—and was emancipated. On October 2, 2015, the issue of whether David was liable for the children's college expenses "post-majority," along with the questions of David's child-support payment and the imposition of the wage-withholding order, was placed before the chancellor. This chancellor, however, was a different chancellor than the parties had previously been before. And following a trial—where only the parties gave testimony—the chancellor made a bench ruling, which was later reduced to a written order that was entered on October 26, 2015.

¶11. Among the various findings and mandates contained in the chancellor's order, five

4

of which are relevant to this appeal, the chancellor found the following.

¶12.    First, she found that David was in arrears in his child-support obligation at the time Joan filed her petition, but that he was current in his child-support obligation as of the date of trial.  Second, she found that David had been ordered on two separate occasions to "implement" an order for income withholding, yet he failed to comply with the chancery court's orders.  Third, she found that David was "in willful and contumacious civil contempt of the previous [o]rder(s) of [the chancery] [c]ourt for his refusal to pay those sums ordered in the time and manner ordered, as well as for his refusal to implement an [o]rder for [i]ncome [w]ithholding, as previously ordered."  Fourth, she declared that the parties were obligated to each pay one-half of their children's college expenses "until such time as the children complete an undergraduate program."  And lastly, she found that the matter was "necessitated" due to David's "willful" contempt, and as a result, ordered David to pay Joan $5,759.56 as reimbursement of her attorney's fees.  It is from this order that David appeals.

**DISCUSSION**

### I.    Contempt

¶13.    "Civil contempt orders enforce a private party's rights or compel compliance with a court's order." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶13) (Miss. 2011).  "Failure to comply with a court order is prima facie evidence of contempt." *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011).  A contempt determination is fact specific and left to the discretion of the chancellor. *Milam v. Milam*, 509 So. 2d 864, 866 (Miss. 1987). Indeed, this Court will not interfere with chancellor's findings of fact unless she was

5

manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Caplinger v. Caplinger*, 108 So. 3d 992, 995 (¶6) (Miss. Ct. App. 2013) (citing *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001)).

¶14. David asserts that the chancellor erred in finding him in contempt for failure to implement an order for income withholding, for failure to abide by his obligation to pay for his children's college expenses, and for failure to pay his child support. We disagree. We address each of these separately.

a. **Contempt for Refusal to Implement an Order for Income Withholding**

¶15. In respect to the citation of contempt for refusing to implement an order for income withholding, David argues that the chancellor's ruling was manifestly wrong.

¶16. "Before a party may be held in contempt for failure to comply with a judgment, 'the judgment must be complete within itself . . . . leaving open no matter or description or designation out of which contention may arise as to meaning.'" *Davis v. Davis*, 829 So. 2d 712, 714 (¶9) (Miss. Ct. App. 2002) (quoting *Wing v. Wing*, 549 So. 2d 944, 947 (Miss. 1989)). Additionally, a contempt citation is appropriate "only when the contemner has wilfully and deliberately ignored the order of the court." *Cooper v. Keyes*, 510 So. 2d 518, 519 (Miss. 1987).

¶17. David argues that the orders were too vague for the chancellor to determine his compliance. David also argues that the citation of contempt was not supported by the evidence in that David did everything in his ability to comply with the obligation. We disagree with both of these assertions.

¶18. First, we find that the order was neither vague nor ambiguous. Both orders declared that David's child-support obligation was to be paid through an income-withholding order to be entered immediately. What is more, the second order filed with the chancery court not only reiterated that David's future payments were to be paid through a withholding order, but it also placed upon David the affirmative obligation to "ensure that a correct income withholding order is in place and that [Joan] is receiving the support payments as ordered." We find that neither of the income-withholding orders was vague; the orders were clear and unambiguous.

¶19. Second, we find that David did not do everything in his ability to comply with the obligation of the order for income withholding. Although David did deliver the withholding order to his employer, the record shows that David took affirmative steps to see to it that the order was not implemented. David was an executive within the organization, and thus had great influence on whether or not the withholding order was implemented. Furthermore, David testified that he sought out the advice of counsel, and then advised the board that he did not believe he was obligated to pay his child-support obligations through the withholding order. The record clearly reflects that David did not do everything in his power to comply with the withholding order.

¶20. Therefore, we find that decision by the chancellor—finding David in contempt for refusal to implement the withholding order—was supported by the evidence, and not manifestly wrong. This issue is without merit.

**b.    Contempt for Failure to Pay Child-Support Obligation**

7

¶21.    David next argues that the chancellor erred in finding him to be in contempt for failure to pay his child-support obligations. As we previously stated, a contempt determination is fact specific and is left to the discretion of the chancellor. *Milam*, 509 So. 2d at 866. And so, "[t]he chancellor's findings will not be disturbed unless manifestly wrong." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014).

¶22.    Although David normally paid his child-support obligation through DHS, David paid his July 2013 obligation directly to Joan pursuant to the chancellor's direction in the June 2013 order. However, Joan failed to notify DHS of David's direct payments, and DHS considered David to be in arrears in his child-support obligation. DHS then seized David's tax refund. Upon learning of the tax-refund seizure, and consulting with DHS, David released the seized monies to DHS so that they then could be applied toward his child-support obligation. David thought that the seized monies, having been released by him to DHS in December, would be credited to his child-support obligation in January 2014. Operating under this assumption, David did not make any payments to DHS in January. But in early February, DHS informed David that there had been some delay in its ability to credit David with the seized tax monies. To comply with the chancellor's mandate that David ensure that Joan received her child support, David made two child-support payments to DHS on Joan's behalf. David made one payment on February 5, 2014, and another one on February 7, 2014. On February 21, Joan filed a petition with the chancery court to cite David in contempt for nonpayment and for other relief.

¶23.    In the order regarding contempt, the chancellor found "that [David] had accumulated

8

an arrearage in child support at the time of the filing of [Joan's] [p]etition for [c]itation of [c]ontempt; however the Court further [found] that [David] [was] current in his support obligation to [Joan] . . . ."

¶24. David argues that there is simply no evidence to support the chancellor's determination that he was in contempt for his failure to pay his child support, because he was not in arrears at the time of Joan's petition. We find that while the chancellor was not manifestly wrong in citing David for contempt, we also agree with the chancellor that such contempt was cured through David's two February payments.

¶25. Whether or not there was an accounting error, it is undisputed that during the month of January 2014, Joan did not receive her support payment from David. At the trial, the chancellor correctly noted that the confusion about the amounts that were to be paid and when they were to be paid would have been avoided had there been a withholding order in place—a withholding order that David was twice ordered to implement. Additionally, as the chancellor pointed out, even though David was current on his support payments, David did not pay as the previous orders required him to pay—$500 a month at the beginning of each month.

¶26. Therefore, we find that the chancellor was not manifestly wrong in citing David for contempt for his failure to pay his child-support obligation. This issue is without merit.

## II. Children's College Expenses Post-majority

¶27. David argues that the chancellor erred in declaring the parties' prior agreement, to each pay one-half of their children's college expenses, continued after their children became

emancipated.

¶28.　The Mississippi Supreme Court has held that "[a]n appellate court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]" *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190 (¶10) (Miss. 2008). "Particularly in the areas of divorce, alimony[,] and child support, [an appellate court] will not overturn the [chancery] court on appeal unless its findings were manifestly wrong." *Mizell v. Mizell*, 708 So. 2d 55, 64 (¶48) (Miss. 1998) (quoting *Tilley v. Tilley*, 610 So. 2d 348, 351 (Miss. 1992)).

¶29.　Our supreme court has long upheld even vague support provisions as an agreement for college expenses after the child has reached the age of majority. *See Motley v. Motley*, 729 So. 2d 1289, 1290 (¶5) (Miss. 1999); *Crow v. Crow*, 622 So. 2d 1226, 1227 (Miss. 1993). In *Boleware v. Boleware*, 450 So. 2d 92, 92-93 (Miss. 1984), the supreme court examined a college-support agreement similar to the agreement before us in this case. The father in *Boleware* agreed to "be responsible for the payment of all college education expenses of the minor children[.]" *Id*. at 92. The father argued that, once his children turned twenty-one, he was no longer obligated to pay for their college expenses. *Id*. at 93. But the supreme court affirmed the chancellor's finding that the parties intended the obligation to extend post-majority. *Id*.

¶30.　In this case, the parties agreed to the obligation in the agreed order. In the relevant portion of the order, the parties agreed, and the chancery court ordered, that they "shall be

responsible for one-half of the costs of a college education for the minor children . . . ." This provision is similar to the one before the supreme court in *Boleware*—in that it uses the phrase "minor children" to identify the children. And like the father in *Boleware*, David argues that once his children turn twenty-one, he is no longer obligated to pay for their college expenses. We disagree.

¶31. The chancellor declared that the parties' agreement to each provide for the payment of one-half of their children's college expenses was to continue until each child completed an undergraduate program. Additionally, we find that the chancellor did not err in citing David for contempt for the failure to pay these college expenses pursuant to the agreed order.

¶32. The chancellor was not manifestly wrong or clearly erroneous, nor did the chancellor apply the wrong legal standard. And we find that there is substantial evidence in the record to support the chancellor's ruling. This issue is without merit.

### III. Award of Attorney's Fees

¶33. Last, David argues that the chancellor's award of attorney's fees was in error. "Where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney['s] fees and expenses should be awarded to the wronged party." *Mabus v. Mabus*, 910 So. 2d 486, 489 (¶8) (Miss. 2005) (citing *State v. Blenden*, 748 So. 2d 77, 87 (¶33) (Miss. 1999)). Generally, an award of attorney's fees in a divorce case is left to the discretion of the trial court. *Gray v. Gray*, 745 So. 2d 234, 239 (¶26) (Miss. 1999).

¶34. We find that the chancellor relied on substantial and credible evidence in the record in finding David to be in contempt. The record reflects that David's intentional actions of

11

failing to comply with his various child-support obligations—whether not paying for his child's college expenses or continually failing to implement a wage-withholding order—caused Joan to expend time and money needlessly. Thus we find that the award of attorney's fees in this case was appropriate. This issue is without merit.

## CONCLUSION

¶35. Reviewing the record, we find no abuse of discretion on the part of the chancellor. Therefore, we affirm.

¶36. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**