# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00508-COA

**ROBERT STUART COLE**                                                                APPELLANT

v.

**CARRIE ANN FISH**                                                                       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2024 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | MARK A. CHINN |
| | JANEAH RAY SAKALAUKUS |
| ATTORNEY FOR APPELLEE: | GAIL D. NICHOLSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/26/2025 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2024-CA-00778-COA

**ROBERT STUART COLE**                                                                APPELLANT

v.

**CARRIE ANN FISH**                                                                       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2024 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | MARK A. CHINN |
| | JANEAH RAY SAKALAUKUS |
| ATTORNEY FOR APPELLEE: | GAIL D. NICHOLSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 08/26/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Robert Stuart Cole and Carrie Ann Fish were granted a divorce on the ground of irreconcilable differences in 2017. In 2024, Fish filed a complaint asking the court to find Cole in contempt for failing to abide by the terms of the divorce. The chancery court ruled on Fish's petition by entering two separate orders. One order dated February 27, 2024, addressed issues of contempt and attorney's fees, while another order dated June 11, 2024, addressed the enforcement of a purported escalation clause relative to child support contained in the child custody and property settlement agreement, which had been incorporated into the judgment of divorce.[1] On appeal, Cole challenges the chancellor's enforcement of the purported child support escalation clause, the increase in his child support obligation, and the award of attorney's fees owed to Fish.

## FACTS AND PROCEDURAL HISTORY

¶2.     Cole and Fish were married on October 29, 2006. During their marriage, the parties had two children, a daughter born in 2007 and a son born in 2010. The parties were divorced on April 5, 2017. The judgment of divorce incorporated a child custody and property settlement agreement (PSA), which provided for the minor children's needs and monetary support.

¶3.     On February 6, 2024, Fish filed an amended complaint that alleged Cole was in

---

[1] Cole is challenging portions of the chancellor's rulings in both the February 27 and June 11 orders. Because both orders derived from a single hearing, the appeals have been consolidated.

contempt for his (1) failure to pay his child support via direct deposit in a timely fashion; (2) failure to provide Fish with his federal tax returns each year in the time frame set forth in the judgment; (3) failure to increase child support payments pursuant to the escalation clause within the judgment of divorce; (4) failure to obtain and maintain a life insurance policy; and (5) improperly claiming one of the minor children for tax purposes. Fish also requested that she be reimbursed for attorney's fees and costs associated with litigating the contempt action.

¶4.     Ultimately, two orders were entered disposing of all Fish's issues. In the order dated February 27, 2024, the court held Cole in contempt for (1) failing to obtain and maintain a life insurance policy; (2) failing to set up direct deposits for child support payments; (3) failing to timely produce his tax returns; and (4) claiming one of the minor children on his 2022 tax return. As a result of Cole's contempt, the court ordered him to reimburse Fish for her attorney's fees in the amount of $9,213.00. Further, the court ordered Cole to pay Fish $500 toward her CPA fees to amend her tax filings to correct problems arising as a result of Cole claiming the minor child on his taxes. The court held that a judgment on the escalation clause in the parties' original agreement would be reserved for a separate ruling. Cole filed a "Motion to Alter or Amend Judgment or for a New Trial" on March 8, 2024, which the court denied on April 17, 2024. Cole filed a notice of appeal on April 30, 2024.

¶5.     In a second order dated June 11, 2024, the chancery court found that the escalation clause in the parties' PSA concerning Cole's child support payment was "free from ambiguity" and therefore enforceable. As such, the court held that Cole's monthly child support payment should be increased to $4,099.65 per month. Further, Cole was ordered to

3

pay Fish $599.65 for each of the ten months leading up to the trial date, for a total arrearage of $5,996.50. The court declined to award Fish attorney fees for the action involving the escalation clause because the court found that Cole's claim "was not frivolous with no hope of success." Cole filed his notice of appeal on July 8, 2024. On July 23, 2024, the Mississippi Supreme Court entered an order consolidating Cole's two appeals. Cole raises three issues on appeal, which we will address separately below.

## STANDARD OF REVIEW

¶6.     In *Caplinger v. Caplinger*, 108 So. 3d 992, 995 (¶6) (Miss. Ct. App. 2013), this Court stated:

> "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Henderson v. Henderson*, 757 So. 2d 285, 289 (¶19) (Miss. 2000) (citation omitted). This Court will not "interfere with the chancellor's findings of fact unless they were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001) (citation omitted). However, the chancellor's application of the law is reviewed under a de novo standard. *Id.*

## ANALYSIS

**I.     Did the chancellor err by enforcing the child support escalation clause?**

¶7.     The parties' PSA contained a section entitled "Child Support and Taxes." This section included the following provision:

> Husband is to pay child support to Wife in the amount of $3,500.00 per month. Child support shall be due on the 20th day of the first month following entry of this Judgment of Divorce by direct deposit and continue every month thereafter. Husband will present a complete copy of his federal tax return each year on or before April 30th and **child support will be increased if**

4

**appropriate based upon statutory guidelines**.

(Emphasis added). As part of Fish's amended complaint, she claimed that Cole "has steadfastly refused to provide a complete copy of his federal tax return each year on or before April 30th and only did so in recent weeks." She also claimed that Cole "has refused to make the adjustment to child support as required by the terms of the judgment of divorce." In his answer, Cole claimed that the provision in their agreement concerning increased child support lacked the specificity required for a valid escalation clause and was therefore not enforceable.

¶8.    In a judgment dated June 11, 2024, the chancery court reasoned that "Robert [Cole] was familiar and knowledgeable of the Mississippi child support guidelines at the time of the divorce and PSA to which he agreed." The chancellor stated that Cole's original child support payment in the agreement "closely approximates" twenty percent of his monthly income pursuant to the statutory guidelines. Finally, the chancellor stated that Cole's prior 2019 complaint for modification did not challenge the validity or interpretation of the escalation clause but, rather, requested that his child support be modified and determined by the child support guidelines. Ultimately, for these reasons, the chancellor held in part:

> [T]he escalation clause does not lack specificity so that it is rendered unenforceable. The escalation clause is unambiguous in stating the parties['] intent that Robert's child support obligation would be calculated based on the statutory guidelines in recognition of the cost increases that would occur in raising children, particularly as they enter their teenage years.

¶9.    In *Short v. Short*, 131 So. 3d 1149, 1153 (¶12) (Miss. 2014), the Mississippi Supreme Court explained, "This Court's evolving interpretation on including escalation clauses in

5

child-support agreements breaks ground in *Tedford v. Dempsey*, [437 So. 2d 410, 419 (Miss. 1983),] in which we explained that escalation clauses could save parties from the distress that accompanies support-modification proceedings." More specifically, in *Tedford*, the supreme court held:

> In the child support provisions of their separation agreements, the parties generally ought to be required to include escalation clauses tied to the parents' earnings or to the annual inflation rate or to some factored combination of the two. Though under the structure of the irreconcilable differences statute freedom of contract is exalted, there are limits. The statute requires that the chancellor find that "the parties have made adequate and sufficient provisions by written agreement for the custody and maintenance of any children. . . ." Miss. Code Ann. § 93-5-2 (Supp. 1982). The chancellor thus has the power and the responsibility, in the face of the reasonably forseeable, to require some sort of reasonable escalation clause tailored to the situation of the parties. Absent unusual circumstances that might render it inequitable, such a clause ought be in every child support agreement. This practice would have the twin virtues of more adequate and timely support for children and less frequent modification litigation.

*Id*. (footnotes omitted). While an escalation clause within a property settlement agreement may be preferred, it does not escape the scrutiny of contract review. *West v. West*, 891 So. 2d 203, 210 (¶13) (Miss. 2004). The supreme court has consistently held:

> "[P]roperty settlement agreements are contractual obligations." *In re Estate of Hodges*, 807 So. 2d 438, 442 (Miss. 2002). The provisions of a property settlement agreement executed prior to the dissolution of marriage must be interpreted by courts as any other contract. *Id*. at 445. In *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986), we held "[a] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.

*Id*. When a dispute arises concerning the terms of a property settlement agreement, the court has delineated a three-tiered process for the purpose of interpretation. *Id*. at (¶14).

First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. [*Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351 (Miss. 1990).] When the language of the contract is clear or unambiguous, we must effectuate the parties' intent. *Id*. However, if the language of the contract is not so clear, we will, if possible, "harmonize the provisions in accord with the parties' apparent intent." *Id*. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. *Id*. at 352-53 (citing numerous cases delineating various canons of contract construction employed in Mississippi). Finally, we may also consider parol or extrinsic evidence if necessary. *Id*. at 353.

*Id*. at 210-11 (¶14).

¶10.    In the case at hand, the disputed portion of the parties' agreement stated in part that "child support will be increased *if appropriate* based upon statutory guidelines."[2] While Mississippi Code Annotated section 43-19-101(1) (Rev. 2023) sets forth specific percentages for awarding child support, section 43-19-101(4) states:

> In cases in which the adjusted gross income as defined in this section is more than One Hundred Thousand Dollars ($100,000.00) or less than Ten Thousand Dollars ($10,000.00), the court **shall** make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable. The court shall take into account the basic subsistence needs of the obligated parent who has a limited ability to pay.

(Emphasis added).

¶11.    It is clear from both parties' trial testimony, as well as statements made by the chancellor in pretrial motion hearings, that there were different interpretations of this broadly sweeping clause in the parties' agreement. When Cole's attorney attempted to question Fish about her understanding of the statutory child support guidelines for two children, Fish's

---

[2] The dissent suggests that it is clear that if Cole's income increased, "his child support payments would increase in accordance with the statutory guidelines." We disagree. The use of the phrase "*if appropriate*" leaves open the question of who determines whether an increase in child support is "appropriate" based solely upon an increase in Cole's income.

attorney objected, stating, "That is a legal question. The statute – lawyers and judges have trouble figuring out what the statute says, much less . . . ." Although Fish did ultimately testify that she was aware the percentage used to calculate the support for two children was twenty percent, the percentage of monthly income may not be the sole factor for consideration when determining child support payments. This is specifically true in cases like the one at hand, where the paying spouse earns over $100,000 per year. *See* Miss. Code Ann. § 43-19-101(4). Fish's attorney stated multiple times that the child support guidelines, which are based on a percentage of income, is not the sole determinant of the amount of child support, but, rather, the court has the authority to require less or more than twenty percent based on the facts before it. Prior to trial, when the chancellor was presented with the language from the parties' agreement, he stated that he was "not sure what 'if appropriate' means. It's a modification." Cole maintained that he believed $3,500 per month was more than sufficient to provide for two children and remain in compliance with the child support guidelines. Cole further argued throughout the trial that the escalation clause lacked specificity by not giving any parameters on when or by how much the support should be increased. The agreement was silent as to a specific controlling percentage of income that was appropriate, whether an increase was contingent on an annual bonus, or if there should be an increase tied to the annual inflation rate. Before this appeal, Cole was never required to pay (nor voluntarily paid) any amount over the $3,500 originally agreed to in the PSA. There is no evidence in the record that the parties ever reached a meeting of the minds as to the interpretation of the child support escalation provision.

¶12. In furtherance of her argument on appeal, Fish claims that Cole's appeal is barred by the doctrine of res judicata. However, Fish raises this defense for the first time on appeal and is therefore barred from raising it because it was not properly pled. *Wholey v. Cal-Maine Foods Inc.*, 530 So. 2d 136, 138 (Miss. 1988). In the alternative, Fish relies on *Stigler v. Stigler*, 48 So. 3d 547 (Miss. Ct. App. 2010), to further her argument that the escalation clause is clear and unambiguous. However, the escalation clause in *Stigler* gave the parties more direction as to how the payor's child support should be increased. *Id*. at 550 (¶3). The clause in *Stigler* stated in part:

> During this calendar year and each calendar year hereafter, should [the] Husband's bonus place the aggregate of [the] Husband's adjusted gross income in excess of the minimum guidelines for child support in effect in the State of Mississippi, the Husband shall pay that amount necessary to bring his child support payments $3,600.00 in excess of the minimum amount of child support as provided by the guidelines then [in] effect for the State of Mississippi based on the Husband's annual income for that year.

*Id*. Fish also cites *Short v. Short*, 131 So. 3d 1149 (Miss. 2014). However, *Short* is also distinguishable from the case at hand. The escalation clause in *Short* stated in part:

> Andy would pay child support in the amount of $50,000 per year until the child began kindergarten; thereafter, he would pay fifteen percent of his adjusted gross income (AGI), never to fall below $36,000 per year.

*Id*. at 1151 (¶1). Because the parties in the case at hand had no clarifying features in their agreement similar to those in *Stigler* and *Short*, and since the parties clearly do not share the same interpretation of the escalation clause, we find that the clause is ambiguous and therefore unenforceable.[3]

---

[3] "A contract is unenforceable if the material terms are not sufficiently definite." *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (¶13) (Miss. 2003).

## II. Did the chancellor err by increasing the amount of child support based on the escalation clause?

¶13. After finding that the escalation clause was enforceable, the chancellor proceeded to recalculate Cole's child support obligation going forward based on his income information and, relying on that figure, determined a specific arrearage amount owed to Fish for the months leading up to the trial. Because we find that the escalation clause was unenforceable, we find that the chancellor erred in adjusting Cole's child support obligation and ordering arrearage payments for the months prior to trial.

## III. Did the chancellor err as to the amount of the award of attorney's fees?

¶14. Cole argues on appeal that the chancellor erred in awarding Fish $9,213 in attorney's fees. Cole claims the attorney's fees not only were not separated and apportioned correctly between the contempt matter and the escalation clause matter, but they were excessive. In the contempt order dated February 27, 2024, the chancellor ordered "that the Defendant, Robert Stuart Cole, due to his contempt, shall pay the Plaintiff, Carrie Ann Fish, $9,213 toward her attorney fees and costs on or before March 22, 2024." In the order dated June 11, 2024, regarding the escalation clause, the chancellor ordered, "The Court declines to award Carrie Ann her attorney fees for this action involving the escalation clause, finding that Robert's claim was not frivolous with no hope of success."

¶15. At trial, Fish's attorney submitted an invoice for attorney's fees, which was introduced as Exhibit 9. Pursuant to the invoice, the total amount incurred and charged was $9,213. The invoice does not distinguish which charges were incurred for the contempt matter versus the

escalation clause matter, instead suggesting that the total amount charged covered both. As a result, despite the chancellor's statement that Fish's request for her attorney's fees in the escalation clause matter was denied, Cole, in fact, had already been ordered to pay all of Fish's fees in their entirety in the previous order.

¶16.    In *Shumake v. Shumake*, 233 So. 3d 234, 240-41 (¶21) (Miss. 2017), the Mississippi Supreme Court upheld the decision in *Tidmore v. Tidmore*, 114 So. 3d 753, 759 (¶14) (Miss. Ct. App. 2013), in which this Court "reversed the chancellor's award of attorney fees in a successful contempt action because the chancellor had awarded the full amount of the attorney fee bill without subtracting the fees attributable to a child support modification action." *Shumake*, 233 So. 3d at 240 (¶21). The court further held that "[g]iven the differing standards for awarding attorney fees in a contempt action and in a modification action, Mr. Shumake is correct that the chancellor erred by failing to subtract the amount of attorney's fees Ms. Shumake incurred in defending the motion to modify alimony." *Id*. at 241 (¶22). Similarly, in the case at hand, Cole was ordered to pay all Fish's attorney's fees with no distinction between the fees attributable to the contempt matter and those attributable to the escalation clause matter. Therefore, we find that the chancellor erred in ordering Cole to pay Fish's attorney's fees in their entirety pursuant to the invoice introduced as Exhibit 9.

## CONCLUSION

¶17.    After reviewing the record, we reverse the chancellor's February 27, 2024 order regarding attorney's fees and remand for a determination of what portion of the attorney's fees were incurred for Fish's representation in the contempt matter and what portion of fees

11

were incurred for Fish's representation in the escalation clause matter. Until an apportionment of fees is completed, any questions regarding their alleged excessiveness are premature. We reverse the chancellor's June 11, 2024 order regarding the escalation clause and render judgment finding the escalation clause unenforceable.

¶18. **APPEAL NO. 2024-CA-00508-COA: REVERSED AND REMANDED. APPEAL NO. 2024-CA-00778-COA: REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McCARTY AND WEDDLE, JJ., CONCUR. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD AND LASSITTER ST. PÉ, JJ.**

**LAWRENCE, J., DISSENTING:**

¶19. I respectfully dissent from the majority's opinion holding that the escalation clause within the parties' agreed child custody and property settlement agreement (PSA) is ambiguous and, therefore, unenforceable. The relevant provision required Cole to provide his federal tax returns each year for a determination of whether his income increased. If his income had increased, then according to the clause, his child support payments would increase in accordance with the statutory guidelines. That seems clear and straightforward to me.

¶20. The chancellor found that Cole "was familiar and knowledgeable of the Mississippi child support guidelines at the time of the divorce and PSA to which he agreed." The chancellor also found that Cole's previous complaint for modification did not challenge the escalation clause. The lack of any prior objection by Cole undermines his claim that the terms lacked the specificity required for a valid escalation clause and further supports the conclusion that the clause was enforceable. The first time Cole objected to the clause that he

and his lawyer approved occurred after Fish filed her complaint for contempt and enforcement of the provision of the judgment of divorce that included the PSA. As the majority correctly stated, this Court will not "interfere with the chancellor's finding of fact unless they were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001) (internal quotation mark omitted) (quoting *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)). Accordingly, I would affirm the decision of the chancellor. Therefore, I respectfully dissent.

**WESTBROOKS, McDONALD AND LASSITTER ST. PÉ, JJ., JOIN THIS OPINION.**